No. 29,440.

FOSTER NEWLAND, *Appellant,* v. THE CITY OF WINFIELD, H. M. DETMER et al., *Appellees.*

(289 Pac. 402.)

Opinion filed July 5, 1930.

W. L. Cunningham, D. Arthur Walker, Fred G. Leach and W. E. Cunningham, all of Arkansas City, for the appellant.

S. C. Bloss, George T. McNeish, Stewart Bloss, L. D. Moore and Harry O. Janicke, all of Winfield, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: Foster Newland sued the city of Winfield and H. M. Detmer and Mrs. Detmer to recover damages for personal injuries suffered by him in a gas explosion. Upon the pleadings and opening statement of the plaintiff the court rendered judgment against plaintiff and in favor of both defendants. Plaintiff appeals.

The principal facts gleaned from plaintiff's petition and opening statement are that the Detmers owned a residence in Winfield, which they advertised as for rent. The Newland family consisted of Foster Newland, who was about twenty-one years old, and his parents. Noticing the advertisement and desiring to rent a residence, they entered into negotiations with the Detmers for a lease of their house. The Newlands asked the Detmers about the condition of the pipes and plumbing, and were told that they were in good and safe condition and would be kept so during the tenancy. After a visit to the house and an examination of the premises by Newlands a lease contract was made and the Newlands began moving their household effects to the Detmer property. They had called the city, which was supplying gas to customers, to install a gas meter at the Detmer house, and the employees of the city brought the meter from the house formerly occupied by the Newlands and installed it and connected the main gas line with the plumbing in the house, and at that time told the Newlands that they had done all that they were required to do, and that the Newlands might safely turn on the gas as soon as their gas stove was set up. About a half hour later Newlands turned on the gas, and shortly afterwards they smelled a slight gas odor, and the plaintiff, Foster Newland, started to investigate in an effort to discover if there was a leak of gas, using a lighted match for that purpose. No leak was found in the upper rooms of the house, and he then went into the basement, where he noticed that the odor was about the same as that found in the upstairs rooms. The basement was dark and he struck a match to search for the leak. Immediately there was an explosion which burned and seriously injured the plaintiff. Afterwards Detmer brought a plumber to the house and found one of the pipes in the basement had been unscrewed and from that opening the gas had

escaped. Certain city ordinances were pleaded as to inspections to be made by the gas company, and it was also alleged that it was the recognized rule and method of work for the gas company when it connects residence plumbing with the main gas line to inspect and test the gas when they install the meter. Plaintiff's parents, it is alleged, had a right to and did rely upon what they had been told and believed that the defendant city had made such inspection tests in accordance with the ordinances and general custom and practice followed by it. That same day the Detmers orally assured the plaintiff's parents that they had inspected the pipes and plumbing and that the same were in a first-class, safe condition and ready for use, and this assurance was believed and relied upon.

On the part of the city it is contended that according to the petition the plaintiff was to turn on the gas after his stove was connected, and further that the pipes and plumbing in the house were under the control of the Newlands and outside of the pipes controlled by the city. It is therefore insisted that the escaping gas was the result of his own act in turning the gas on. The ordinances pleaded, it is insisted, apply only to newly constructed buildings and are not applicable to families moving from one residence to another every time there is a change of occupancy. Plaintiff states that in order to make a test it was the usage and custom in turning the gas into a building to close all the appliances. It is said the plaintiff knew, as a matter of fact, that the agents of the city had not made the test which he says custom and usage demanded. It was discovered that there was one joint of pipe unscrewed, which accounted for the leak, and that if the plaintiff had done just what he says it was the duty of the city to do he would have discovered this unscrewed pipe. The city, it is said, is not engaged in the plumbing business, has nothing to do with inside appliances, does not remove them, repair them nor install them.

The Detmers in their brief rest their case largely on the doctrine of contributory negligence and insist that Detmers had surrendered the possession of the premises to Newlands, that they did not know about the unscrewed pipe and that it could have been seen as easily by the plaintiff as by Detmers. Plaintiff had not requested them to test out the gas pipes or the plumbing, and after smelling gas upstairs he went into the basement, and must have known that if there was a quantity of gas there it would be ignited by a match, and due to that carelessness the explosion occurred.

The plaintiff insists that the only question for the court to determine is, Is the use of a lighted match to hunt for a leak in gas pipe contributory negligence as a matter of law? He cites authorities to show that one who smells gas and undertakes to find it by the use of a match may do so without being guilty of contributory negligence.

First, taking up the decision of the court as to the liability of the city of Winfield for the injuries sustained by plaintiff, the question is presented whether the city failed to exercise the care required of it in the making of inspections of the plumbing in the house and the performance of its duty in the placing of the meter, as well as the question of the contributory negligence of the plaintiff. We are of the opinion that the city cannot be held responsible for the injuries resulting from the explosion. It appears that in the ownership and operation of the gas plant the city was acting in a proprietary capacity, carrying on business for a profit, and hence its obligations and liabilities are substantially the same as those of a private corporation or an individual owner and operator. Application was made to the city to install a meter at the Detmer house and to connect the house with the gas mains of the city while the Newlands were busy moving their goods into it. Although not an old house, it had been occupied by former tenants for some time. A meter was placed by the city, in accordance with the request, just outside of the house, and when placed it was tested to see if the connection was efficient and that gas passed through the meter. The employee finding that it did, then shut off the gas and told the occupants that they had done all that was required of them. It appears that connections had not been made with stoves in the inside of the house—a task that belonged to the Newlands and not to the city—and according to the statements made by the employees of the city, the occupants were told that the connection was complete and that they might turn on the gas when they had set up their stoves. The employees did not undertake to make the connections inside of the house nor to examine the pipes therein. The city was not engaged in the plumbing business and were not responsible for the setting up of stoves and making connections in the plumbing, nor yet to make repairs of it. The work of setting up the stoves and making connections was undertaken by the Newlands, but what they did in that respect is not clearly shown, but whatever was done by them in connecting stoves or adjusting plumbing, the city had no part in

it. Without calling a city employee or a plumber to see whether connections were properly made, they turned on the gas. It is insisted that it was the duty of the city to make inspections of the plumbing before turning on or authorizing them to turn on the gas, and references are made to the requirements of city ordinances, but these appear to apply to the connecting of the gas mains with newly constructed buildings before they are occupied. It is also said that—

"It was the custom and recognized practice in Winfield and elsewhere that when a gas company installs a meter at a residence, after the installation they turn on the meter for a moment and watch the dial or hands to determine whether or not the pipes within the residence being supplied with gas are in safe and proper condition," etc.

Even if it was the practice of the city to inspect pipes before turning on the gas, such a test could not be made by the city until the occupants of the house had made the connections which they undertook to make. Without notice to the city or an examination by a plumber, they turned on the gas themselves, and, noticing an odor of gas, lighted a match to search for a leak, and the explosion instantly followed. If it was the custom of the city to make an inspection before turning on the gas, the occupants knew that the city had stopped at the installation and test of the meter and that no inspection of the pipes in the house had been made. If they relied on a custom of the city to have an inspection they should have called upon the city to make it after they had finished their plumbing operations in making connections with their stoves before taking the responsibility of turning on the gas. Assuming, as we must, that the city employees told the occupants they might turn on the gas after the connections with the stoves had been made by themselves, they knew that the test could not be made until they had finished their work, and knowing that the test was essential and had not been made, the occupants really assumed the task of doing what plaintiff says the city should have done; that is, the making of an examination of the pipes to ascertain if there were leaks in them. When they turned on the gas and discovered the odor of it then was the proper time to shut it off and call a plumber or employee of the city to find and mend the leaking pipes. Instead they allowed the full flow of gas through the meter while plaintiff carried the lighted match into the basement. So far as the city went in placing the meter and making the connection with the gas

main its work was properly done, and the defect in the plumbing was inside the house within the control of the occupants and owner of the house. Upon the pleadings and statements we conclude that the court correctly decided that the plaintiff was not entitled to judgment against the city.

In the matter of the liability of the Detmers, the owners of the premises, a different situation exists. The plaintiff alleged that when they began moving their goods into the house they were assured by the Detmers that the plumbing had been inspected and was then in good condition. The following averments were set forth in plaintiff's petition:

"That on or about July 2, 1928, a few hours after said plaintiff's parents had commenced moving into said Detmer property, they found that a water pipe was leaking and they called the said Detmers and informed them of the same and requested they examine all of the plumbing at once, whereupon defendant Detmers came to said residence and performed some work on the plumbing, the exact nature of which this plaintiff cannot state, but alleges the same is well known to said defendants.

"That thereafter, and later in the same day, the said Detmers again orally assured said plaintiff's parents that they had inspected said pipes and plumbing and that the same were in a first-class, safe condition and ready for use, all of which plaintiff's parents believed and relied upon."

Here the owner did not confine his assurance to the condition that he would keep the plumbing in repair, but stated that he had just made an examination of all the plumbing, which necessarily included gas and water pipes, and that all were in safe condition. This assurance was not based on an examination made at a remote time, but one made upon that day. Notwithstanding this representation and assurance, it appears that Detmer brought a plumber to the house right after the explosion, and they found that a pipe had been unscrewed and that the gas had leaked from that aperture. It was natural that the plaintiff and his family should have rested on the assurance of the owner, since they had no knowledge of the defect. Detmers base their defense on the contributory negligence of the plaintiff, in that he searched for a leak in the gas pipe with a lighted match. As the case was presented, Was the question one of law for the court or should it have been submitted to the jury? Contributory negligence is a matter of defense, and on the specific question of whether there is negligence in searching for a leak of gas with a light it has been said:

"It is not contributory negligence *per se* to use a match or lighted candle

in trying to discover a gas leak, or to enter with a light a cellar or other closed place into which gas is escaping. In such cases the question of contributory negligence is to be determined by a consideration of all the circumstances, such as the extent of the leak, the size of the inclosure where located, and the length of time the leak has existed; and is for the jury. If one has notice that gas is present in large quantities, it is negligence for him to apply a lighted match to it. But if the quantity is small, or if there is nothing to cause a man of ordinary prudence placed in the same situation to believe that there is danger of an explosion, it is not necessarily negligence to light a match. The distinction between the two classes of decisions lies in the fact that in one there are no surrounding circumstances from which the person injured may reasonably infer that he may safely search for the leaking gas with a light, while in the other cases such relieving circumstances are to be found." (28 C. J. 598.)

Gas was detected on the upper floor of the house, and plaintiff made a search for leaks there with a lighted match and found none. He then went to the basement, and his statement is that going down there he was not able to smell any more gas than he had found upstairs, and there being no apparent danger he struck a match to examine the pipes. Of course plaintiff knew, or must be held to have known, that gas in quantity mixed with air is an inflammable explosive and that the flame of a match is likely to cause an explosion. But did the odor he smelled indicate the quantity of gas or the dangerous character of the mixture? His experience on the upper floor and the fact that the odor was no stronger in the basement than above assured him that there was no more danger in the use of a match in the basement than there was in the room above. How can it be said, then, that he appreciated the danger or that a man of ordinary prudence would have appreciated it? How can it be said that the danger was so obvious that the court can say as a matter of law that the lighting of a match amounted to contributory negligence? Could anyone other than an expert determine by the sense of smell the quantity of gas existing in the basement or the dangerous character of the mixture of gas and air in it? In *Lawrence v. Scranton City*, 284 Pa. St. 215, gas was escaping through a manhole, and a boy waiting there for the arrival of another smelled the gas, but struck a match to light a cigarette. There was an explosion, and the contention was that he was guilty of contributory negligence as a matter of law. Among other things, the court said:

"Escaping gas is dangerous, but the point at which it becomes dangerous is not a well-known fact. One may approach to within a certain distance

from a leak with a light in safety, but, in approaching, that point is reached where the mixture of gas and air becomes dangerous. The location of this point is difficult to determine. Gas should be confined, the leak large enough to create some pressure, and the mixture about perfect. We have held that one may go into a cellar or attic with a lighted match, lamp or with a lighted taper hunting along a gas line for a leak and not be guilty of contributory negligence. (*Plonk v. Jessop,* supra.) The common practice of discovering gas leaks is by the use of a match or candle. In *Plonk v. Jessop,* 178 Pa. 77, 35 Atl. 851, plaintiff, who knew gas would explode if brought in contact with a light, used a match or burning taper to discover a gas leak, going into the cellar for that purpose. . . . So it may be said as to this boy, assuming he knew gas was present, his knowledge of the danger point around the manhole where he struck his match, or his contributory negligence, is a question of fact for the jury." (pp. 223, 224.)

In *Plonk v. Jessop,* 178 Pa. St. 71, where a person had smelled gas and lighted a taper and searched along the pipes to a point where an explosion took place, and the question was whether it was a case for submission to a jury as to defendant's negligence, it was said:

"The knowledge of the explosive character of gas certainly may be presumed to be general among persons who have it in their houses, and plaintiff admitted such knowledge. But how far a smell of gas indicates a leak that may safely be searched for with a match or candle, and at what point it means danger of explosion in so doing, is a question requiring judgment and some experience. Plaintiff had seen indications of a leak, had seen it searched for by defendant's men with matches and a light, and had then been told that everything was right. When after that he smelled gas it could not be said as a conclusion of law that he necessarily had reason to suppose he would find anything more than a leak that might be safely searched for with a light as he had seen done by defendant's men earlier in the day. He may have been negligent in going into the attic as he did, but we think it is for a jury and not the court to say so." (p. 77.)

In *Schmeer v. Gas Light Co.,* 147 N. Y. 529, it was said:

"Sometimes it is extremely dangerous to take a light to discover the location of a gas leak and sometimes it is not, depending upon various circumstances—among others, upon the extent of the leak, the size of the inclosure where located and the length of time the leak has existed. The plaintiff's intestate, a boy of eighteen, took the candle with the statement that he had seen gas men take a candle to find a leak, and it is a fact that they do so upon some occasions. The whole case as to the contributory negligence of the plaintiff's intestate should be submitted to the proper judges of fact." (p. 541.)

See, also, *Dowler v. Gas Company,* 71 W. Va. 417; *Pine Bluff W. & L. Co. v. Schneider,* 62 Ark. 109; *Smith v. Company,* 83 N. H. 439; *Kibele v. City of Philadelphia,* 105 Pa. St. 41, 45.

We conclude that the court did not err in giving judgment in favor of the city, but did err in taking the issue of contributory negligence relied on by the Detmers from the jury and determining the question as a matter of law.

The judgment will be affirmed as to the city of Winfield and reversed as to defendants, Detmers.