No. 36,207

M. C. Jelf and Ollafae Jelf, His Wife, *Appellees*, v. The Cottonwood Falls Gas Company, Inc., *Appellant*.

No. 36,208

Ollafae Jelf, *Appellee*, v. The Cottonwood Falls Gas Company, Inc., *Appellant*.

(160 P. 2d 270)

Opinion filed July 7, 1945.

*Carl O. Ballweg* and *H. C. O'Reilly,* both of Cottonwood Falls, argued the cause for the appellant.

*Harry K. Allen,* of Topeka, argued the cause, and *L. M. Ascough,* of Topeka, was on the briefs for the appellees.

The opinion of the court was delivered by

SMITH, J.: These two actions were for damages alleged to have been sustained in an explosion of natural gas. They were consolidated in the trial court and on appeal were consolidated here. The judgment in each one was for the plaintiffs. The defendant has appealed.

The actions are to recover damages alleged to have been sustained when an explosion occurred in the home of plaintiffs, destroying the house and damaging the contents. One action is by the husband and wife to recover damages for the contents. The other is by the wife to recover damages for the destruction of the residence. It was brought by her because the property was in her name. For the sake of clarity and to avoid repetition the pleadings in the action brought by the husband and wife will be referred to herein.

This petition, after alleging the marital relationship of plaintiffs and that the defendant was a corporation and that plaintiffs were the owners of the household goods and personal effects contained in the dwelling house which they occupied as a residence (a list of the household goods and personal effects was attached to the petition) alleged that the defendant was in the business of furnishing natural gas to the residents of Cottonwood Falls; that it owned and operated a system of gas mains through the streets and alleys of the city; that part of this system consisted of gas mains along a certain alley adjacent to the lots on which plaintiffs' home was located; that the service pipe extended from the gas main in the alley to the residence

of plaintiffs, and that it was the belief of plaintiffs that the defendant owned the lateral connecting with defendant's gas main in the alley. The petition then alleged that for the purpose of delivering gas to the residence of plaintiffs the company had established a gas meter attached to plaintiffs' residence and that the pipes and laterals leading thereto had rusted and deteriorated; that on or about July 15, 1943, plaintiffs notified the gas company that gas was escaping into their residence. Thereupon the employees of the defendant examined the pipes to determine the source and cause; that again in August and again in September plaintiffs advised defendant of escaping gas; that plaintiffs did not know which of the connections and pipes were affected; that on September 7, 1943, about the hour of four-thirty an explosion occurred in the dwelling house of plaintiffs, which caused a fire from which plaintiffs' household goods were totally destroyed; that the explosion was caused by the carelessness and negligence of defendant in certain particulars, as follows: In permitting said gas to escape from the pipes and fittings above described and to accumulate in plaintiffs' dwelling; in undertaking to, deliver its gas to plaintiffs' residence through laterals and service. pipes of inadequate size; in transporting and delivering its gas through said laterals and service pipes to plaintiffs' residence after the same had become deteriorated and unsafe for the transportation of said gas; in furnishing said gas to plaintiffs when the gas meter, fittings and appliances installed in plaintiffs' residence were in a defective and unsafe condition and in allowing the gas to accumulate in plaintiffs' residence through such defective pipes, fittings and appliances after the defendant, its servants, agents and employees had notice of such defects and that such gas was leaking and escaping into plaintiffs' residence, and in failing to repair such pipes, fittings and appliances after notice of such defects, and in failing to prevent the gas from leaking, escaping and accumulating in the residence after such notice. That the explosion and damage to plaintiffs' household goods and personal effects were directly and proximately caused by the carelessness and negligence of defendant as above specified. The petition alleged that the household goods of plaintiffs were destroyed and were of the reasonable value of $2,957.70. Judgment was asked for that amount.

The defendant filed a general denial. It admitted it was a corporation and plaintiffs were residents of Chase county and defendant gas company had been engaged in the distribution of natural

gas and that a portion of this system contained a gas main, pipes and connecting lines in the public alley in the rear of plaintiffs' property.

The answer denied that the company owned any mains, pipes or connections in or upon the property occupied by plaintiffs but admitted that it owned the gas meter. It also denied that for the purpose of delivering gas to the residence located upon the lots owned by plaintiffs it established and placed the gas meter at the residence of plaintiffs and denied that any explosion caused by natural gas occurred and also denied that plaintiffs suffered or sustained any damage occasioned or resulting from the explosion of natural gas. The answer then alleged that if any damage did occur it was caused by the negligence and carelessness of the plaintiffs in continuing to receive natural gas for use upon these premises and within the residence and continuing to keep the pilot light on the hot water tank lighted after they had knowledge and notice of the smell of gas and the accumulation of gas in and around the premises and failing to take precautions after knowledge of danger and in exposing the premises and property to obvious danger.

The petition in the other case was substantially the same except for the amount of damages.

To each of the answers the plaintiffs filed a reply denying all the allegations, especially contributory negligence. At the close of the plaintiffs' evidence the defendant demurred on the ground that it did not prove or tend to prove any cause in favor of plaintiffs against the defendant. This demurrer was overruled.

When the cases were submitted to the jury, the jury found for the plaintiffs in each case and answered special questions as follows:

"1. Was the property of the plaintiff damaged by reason of an explosion of gas? A. Yes.

"2. By whom was the gas supplied to the residence of the plaintiff? A. The Cottonwood Falls Gas Co., Inc.

"3. At any time prior to said explosion, did the defendant (a) have knowledge of or (b) notice of the escape of gas onto or around the premises of the plaintiff? A. (a) Yes. (b) Yes.

"4. If you answer the foregoing question in the affirmative, then state (a) when the defendant had such knowledge or notice and (b) how such knowledge or notice was acquired. A. (a) July, 1943, and August, 1943. (b) Verbally and by telephone.

"5. If you answer question No. 3 in the affirmative, then state whether the defendant did anything to prevent the escape of the gas onto or around the

premises of the plaintiff and if so, state what action was taken by defendant. A. No evidence to that effect.

"6. Was the defendant negligent in permitting gas to escape onto the premises of the plaintiff? A. Yes.

"7. If you answer the foregoing question in the affirmative, then state in what respect it was negligent. A. By failure to properly make inspection.

"8. Was such negligence the proximate cause of the damage suffered by the plaintiff? A. Yes.

"9. If you find that the plaintiff is entitled to recover, then state (a) what amount you allow for damage to the building and (b) what amount you allow for damage to the contents of the building. A. (a) $1430.00. (b) $1950.00.

"10. At the time of the explosion and for some time prior thereto, who do you find owned and controlled the gas pipes, laterals, and appliances for the use of gas both within the residence and outside thereof but located in or upon Lots 3 and 4, Block 23, North Cottonwood Falls, Kansas, with the exception of meter owned by defendant? A. Plaintiff or plaintiffs.

"11. Did the plaintiff or plaintiffs hire any one or cause any one to check or inspect the premises in question for escaping gas and to make repairs that might be required or necessary? A. Yes.

"12. If you answer question No. 11 in the affirmative, state who were so employed, or caused to check or inspect the premises in question for escaping gas and to make repairs that might be required or necessary? A. The Cottonwood Falls Gas Co., Inc., employee.

"13. Do you find that a person or persons at the instance of plaintiff or plaintiffs went upon said premises and proceeded to make such inspection. prior to the explosion? A. Yes.

"14. Did the plaintiffs or either of them have knowledge or notice of escaping gas prior to the explosion? A. Yes.

"15. If you answer question No. 14 in the affirmative, state approximately for how long a period before the explosion, they or either of them had that knowledge? A. Six or seven weeks.

"16. Do you find that the plaintiffs had an automatic hot water heater with pilot light flame alight in operation in said residence at the time of the explosion and for considerable period prior thereto? A. Yes.

"17. What if anything did the plaintiffs fail to do that they should have done after knowledge of escaping gas or indication thereof were brought to their attention? A. None.

"18. Where do you find that the explosion occurred with reference to said residence? A. In residence."

At the conclusion of the trial the defendant first filed a motion that it should have judgment on the answers to special questions notwithstanding the verdict. Also a motion for a new trial and a motion to set aside the answers to certain special questions. These motions were all overruled and judgment rendered in accordance with the verdict.

Defendant first argues that the court erred in overruling its de-

murrer to the evidence. The argument of defendant on this phase of the case first turns upon the failure of plaintiffs to prove the allegations of paragraph 6. That paragraph alleges—

"For the purpose of transporting and delivering gas to the residence of plaintiffs, the defendant company had established and placed a gas meter at, and attached to, plaintiffs' residence and had constructed laterals and service pipes connection with defendant's gas main in the alley adjacent to plaintiffs' lots above described, and from thence running into plaintiffs' residence, said pipes and laterals so constructed, operated and used by defendant to transport gas to plaintiffs' residence were placed underground, and through long usage had rusted and deteriorated, although the exact time of the deterioration is unknown to these plaintiffs."

The portion of this allegation which is important is that which states that the defendant company had established and placed a gas meter at the plaintiffs' residence. This was admitted in the answer. Moreover, Mrs. Jelf testified that after the explosion the gas company came and got their meter; that they took some of the pipe that was attached to the meter and that this pipe was rusted. She also testified that the company owned the meter. For the purposes of a demurrer to the evidence this was sufficient evidence to go to the jury on the allegations of the above paragraph. It should be noted that none, of the parties disputed that the plaintiffs owned the pipe from the alley to the meter.

Defendant next argues there is no evidence to sustain the allegations of paragraph 7. That is the paragraph which alleges the notice to the defendant that the gas was leaking. To prove that allegation Mrs. Jelf testified that about the first of August she telephoned the girl at the gas office telling her "We smelled gas in the house and supposed there was a leak." Mr. Jelf testified that he first noticed gas escaping in July; that he called Mr. Meriowsky and told him about it; that Mr. Mariowsky worked for the gas company as a field man; that Mr. Meriowsky said he would look into it and investigate it. He also testified that he told a Mr. White, who worked for the gas company, that they smelled escaping gas. For the purpose of the demurrer to the evidence the above was sufficient to sustain an allegation of notice to the gas company.

Defendant next argues that there was no evidence to sustain the allegations of paragraph 8. This is the paragraph that alleged the total destruction of the house and household goods. There was conflicting evidence on this and while there was some evidence that there was salvage left in the household goods the whole question was

submitted to the jury on proper instruction. This is not a proper matter to raise on a demurrer to the evidence.

Defendant next argues that there was no evidence to sustain the allegations of paragraph 9 of the petition. This is the paragraph which alleged the negligence of the defendant. There was evidence that the riser from the pipe to the meter was pitted and deteriorated. There was ample evidence that gas was escaping. It is not necessary that the plaintiff in order to recover for the explosion of natural gas in the house show the exact nature of the defect. In *Sternbock v. Consolidated Gas Utilities Corp.*, 151 Kan. 81, 98 P. 2d 162, we held:

"Natural gas is a highly dangerous agency, and persons engaged in transporting it are held to a high degree of care in laying, inspecting and maintaining their transportation facilities, to the end that they may reasonably protect not only the life and property of their customers, but also the life and property of others in close proximity thereto.

"Direct proof of negligence is not essential to recovery, as negligence may be established by circumstantial evidence alone. Where circumstances proved fairly justify the inference of negligence on the part of a transporter of natural gas in laying, inspecting or maintaining its service pipes, the evidence is sufficient to take the case to the jury.

"Circumstantial evidence in a civil case, in order to be sufficient to sustain a verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that reached by the jury." (Syl. ¶¶ 1, 2, 3.)

In *Miller v. Wichita Gas Co.*, 139 Kan. 729, 33 P. 2d 130, we considered the duty owed by the gas company to customers, and said:

"(1) A gas company is guilty of negligence, with certain exceptions, if a leak in its own pipes and appliances causes injury to persons or property, whether or not it had actual notice of such leak or leaks, because a gas company is bound to keep its own pipes and appliances in good condition and to have a proper system of inspection to discover leaks.

"(2) A gas company is guilty of negligence if a leak in a customer's pipes and appliances causes injury to persons or property, provided the company has sufficient notice of such leak or leaks, and having such notice (a) negligently inspects or negligently repairs; (b) agrees and assumes to inspect and repair, and then fails to do so; (c) refuses to inspect and repair, knowing a dangerous condition exists, and with such knowledge fails to shut off its gas until the owner can have his pipes and appliances properly repaired." (p. 732.)

When it was notified that the gas was leaking in the residence of plaintiffs it was the duty of the gas company to immediately inspect the premises, including the plaintiffs' pipes, fittings and appliances to the end that the cause of the leaking gas might be discovered by it and if the leaks be in the pipe, fittings and appliances owned by plaintiffs, to shut off the gas until proper repairs be made.

Defendant next argues that its demurrer to the evidence should have been sustained because the undisputed evidence of the plaintiffs showed that the plaintiffs were guilty of contributory negligence as a matter of law.

Defendant pointed out that Mrs. Jelf testified that when she was going to work she noticed the smell of gas and left the windows open; that the gas was so strong that she did not want to stay in the house and she opened the windows to try to get it out. The testimony of Mr. Jelf was to about the same general effect. They also both testified that the pilot light on the hot water tank was kept burning all the time. There was also evidence on the part of the plaintiffs that a Mr. and Mrs. Waddell were in the house the evening before the explosion and that they smelled gas and thought it was too strong to stay in there and breathe. In this connection defendant calls to our attention the rule laid down as follows:

"If a person knows that gas is escaping into his house from the main of a gas company, it is his duty to take suitable precautions for his safety, and if he does not do so, and damage results, he will be guilty of contributory negligence and cannot recover." (28 C. J. 598.)

Defendant also calls to our attention the case of *Newland v. City of Winfield*, 131 Kan. 191, 289 Pac. 402. That is a case where a plaintiff just moved into a house and turned the gas on himself without notice to the city or calling a plumber and was injured in the explosion which occurred sometime thereafter. Furthermore, we held that the question of whether the plaintiff in that case was guilty of contributory negligence was one for the determination of the jury under all the surrounding facts and circumstances.

In considering a demurrer to the evidence we will take all the evidence in favor of plaintiffs as true and will draw all reasonable inferences therefrom that are favorable to the plaintiffs' case.

Plaintiffs also testified that at the time they smelled the gas in their residence they thought the gas was leaking into their house so they inspected all the pipes and joints above the floor with a lighted match to see whether or not they could discover the leak and no leak was discovered and no explosion occurred. It is a well-known fact that natural gas must be confined in order to explode so as to destroy a building. Surely when plaintiffs looked for the leak with a lighted match and there was no explosion it cannot be held that it was contributory negligence as a matter of law, for them to live in the house and keep the pilot light burning on their hot water heater. It seems a reasonable inference to be drawn from all the

testimony in this case that the plaintiffs did not think the gas leak was so dangerous as to cause an explosion and thus make it dangerous for them to remain in the house and keep their pilot light burning.

In this state of the record we hold that the question of whether or not the plaintiffs were guilty of contributory negligence was a question of fact which was properly submitted to the jury.

Defendant next argues that the court erred in not giving certain instructions which were requested by defendant, that is, as to requested instructions. The questions covered by them were dealt with in the instructions given. In requested instruction 3 defendant asked the trial court to instruct the jury as follows:

"You are further instructed that it is the duty of one applying for and receiving gas to keep in good order and a state of good repair all instrumentalities through which said gas is to be used which are under his control, such as appliances and pipes in the house, and service line, and is required to inspect, maintain and keep in good repair all pipes, connections, fittings and appliances located upon his premises and within his residence, which he owned or controls, unless you find from the evidence presented that the defendant assumed the responsibility therefor, and if you find from the evidence that the plaintiffs herein failed or neglected to inspect, maintain, or repair such appliances, pipes, connections, and fittings, your verdict should be for the defendant."

This instruction was properly refused. The action was tried on the theory that having been notified by plaintiffs that gas was leaking into their residence it was the duty of defendant to make such an inspection as would disclose the cause of the leak and enable whoever was responsible for maintaining the appliance or pipe to repair it. The defendant owed plaintiffs that duty. See 38 C. J. S. 738; *Miller v. Wichita Gas Co.*, supra; also 12 R. C. L. 909. The requested instruction was not proper under the facts in this case. The same statement may be made as to requested instructions 4, 5 and 6. The instructions given on the whole fairly cover the law of this case.

The same answer may be made to the next specification of error wherein the defendant argues that the court erred in giving instruction 6. This instruction was as follows:

"There has been no evidence offered in this case as to how the gas was ignited that caused the damages complained of by plaintiff. But I instruct you that if gas accumulated in the building of the plaintiff through the negligence of the defendant company and was ignited without any negligence on the part of the plaintiff then I instruct you that the manner in which it became ignited would not be of any importance in these cases."

This instruction correctly stated the law. See *Miller v. Wichita*

*Gas Co.*, supra, and *Sternbock v. Consolidated Gas Utilities Corp.*, supra.

In the next specification of error, defendant argues that the trial court erred in refusing to submit to the jury a special question. This question was as follows:

"State whether or not the plaintiffs continued to use natural gas in said residence after knowledge of the danger from escaping gas."

This question is covered by other questions that were submitted to the jury.

Defendant next argues that the court should not have permitted questions 3, 4 and 5 to have been submitted to the jury. These questions were as follows:

"3. At any time prior to said explosion, did the defendant (a) have knowledge of or (b) notice of the escape of gas onto or around the premises of the plaintiff? A. (a) Yes. (b) Yes.

"4. If you answer the foregoing question in the affirmative, then state (a) when the defendant had such knowledge or notice and (b) how such knowledge or notice was acquired? A. (a) July, 1943, and August, 1943. (b) Verbally and by telephone.

"5. If you answer question No. 3 in the affirmative, then state whether the defendant did anything to prevent the escape of the gas onto or around the premises of the plaintiff and if so, state what action was taken by defendant. A. No evidence to that effect."

It is hard to understand just why the appellant would argue that these questions should not have been submitted. The jury's answers to them constitute an important element of the liability of the defendant. Defendant argues that they should not have been submitted because there was no evidence to support the answers made. This argument could more properly be made on a motion to set aside the answers. There was sufficient evidence on the point though to warrant the trial court in submitting them.

Among the specifications of error presented by defendant is one that the court erred in denying its motion in each case to set aside the jury's answers to certain special questions. No argument is offered, however, on this specification in its brief. We have examined the questions and answers and find there is no error in the failure of the court to strike out these answers that would require a reversal. Moreover in view of the final disposition to be made of this appeal we do not deem it necessary to deal with this specification. There is to be a new trial of the action. These same questions may not be asked and if they are asked the answers may not be the

same. We will not give further consideration to the action of the trial court in denying the motion of the defendant to strike them out.

Defendant next argues that it should have had judgment in its favor upon the answers to the special questions notwithstanding the general verdict. In this connection defendant first calls our attention to questions 10, 11 and 12. Those questions and answers were as follows:

"10. At the time of the explosion and for some time prior thereto, who do you find owned and controlled the gas pipes, laterals, and appliances for the use of gas both within the residence and outside thereof but located in or upon Lots 3 and 4, Block 23, North Cottonwood Falls, Kansas, with the exception of meter owned by defendant? A. Plaintiff or plaintiffs.

"11. Did the plaintiff or plaintiffs hire any one or cause any one to check or inspect the premises in question for escaping gas and to make repairs that might be required or necessary? A. Yes.

"12. If you answer question No. 11 in the affirmative, state who were so employed, or caused to check or inspect the premises in question for escaping gas and to make repairs that might be required or necessary? A. The Cottonwood Falls Gas Co., Inc., employee."

As to question 10, the facts found in that answer are among those admitted by all the parties at all times. The liability of the defendant in this action is not based on the ownership of appliances or equipment being in either party. It was the duty of the defendant after being notified the gas was leaking to inspect for leaks whether in its property or that of the plaintiffs and if the leaks be discovered in the property of the customer to shut off the gas until repairs could be made. See *Atkinson v. Wichita Gas Co.*, 136 Kan. 854, 18 P. 2d 127. Certainly there was nothing about this answer to require judgment for the defendant.

As to the answers to questions 11 and 12, in these answers the jury found that the plaintiffs either had or caused an employee of the defendant to inspect the premises in question and to make repairs that might be necessary. It is a little difficult to see how the jury made these two answers. We find no evidence to support them. As a matter of fact what plaintiffs did was to endeavor to cause some employee of the defendant to make an inspection. We see nothing in these two answers, however, which would require judgment for defendant. The fact that plaintiffs caused someone to inspect the premises would have no effect on defendant's liability.

Defendant also argues that its motion for judgment on the answers to special questions should have been sustained on account of

the answers of the jury to questions 13, 14, 15, 16 and 18. Those questions are as follows:

"13. Do you find that a person or persons at the instance of plaintiff or plaintiffs went upon said premises and proceeded to make such inspection, prior to the explosion? A. Yes.

"14. Did the plaintiffs, or either of them have knowledge or notice of escaping gas prior to the explosion? A. Yes.

"15. If you answer question No. 14 in the affirmative, state approximately for how long a period before the explosion, they or either of them had that knowledge? A. Six or seven weeks.

"16. Do you find that the plaintiffs had an automatic hot water heater with pilot light flame alight in operation in said residence at the time of the explosion and for considerable period prior thereto? A. Yes.

"18. Where do you find that the explosion occurred with reference to said residence? A. In residence."

In its answer to question 13, the jury found that someone, at the instance of plaintiff, had gone upon the premises to make an inspection prior to the explosion. There is a statement by Mr. Jelf in the record that two persons were at the house at that time. The fact, however, that some person at the instance of plaintiffs or plaintiffs themselves was on the place at the time of the explosion would not require a judgment for the defendant.

The answer to questions 14, 15, 16 and 18 deal with the question of contributory negligence, which we have already considered in this opinion. The fact that the plaintiffs had knowledge of escaping gas for six or seven weeks and kept their pilot light burning did not as a matter of law constitute a finding that the plaintiffs were guilty of contributory negligence.

The defendant next argues that this motion for judgment on the answers to special questions notwithstanding the general verdict should have been sustained on account of the jury's answer to question 17. That question and answer are as follows:

"17. What if anything did the plaintiffs fail to do that they should have done after knowledge of escaping gas or indication thereof were brought to their attention? A. None."

It is difficult to see why this answer required judgment to be entered for the defendant. The argument made with reference to this by defendant would seem properly directed to a motion to strike out the answer. Such a motion as that would not have been sustained, however, because there is ample evidence that the plaintiffs did everything they were bound to do after they smelled the gas, that is, they searched for the leak themselves and notified the gas company.

Defendant argues it was plaintiffs' duty to shut off the gas at the outside of the house. That, however, is not the law.

The next question argued by defendant is that its motion for a new trial should have been sustained. There are many grounds stated in this motion. The one with which we are concerned, however, has to do with the court's ruling in refusing the admission of certain evidence. One of the points in controversy was the value of the property that was destroyed. Mr. Jelf testified to this value. When it came time for the defendant to put in its evidence it called Mr. Jelf who testified first he was county clerk and by virtue of that position was also county assessor. Counsel asked him to refer to the assessment rolls of the personal property of himself and Mrs. Jelf for 1943. When he had done this the defendant asked him to tell the jury the assessed valuation of their household effects for that year. The objection to this question was sustained. After some colloquy Mr. Jelf was permitted to state that the property was more valuable at the time of the explosion than it was at the time he gave its value to the assessor. When asked how much more valuable he said one dollar. When counsel repeated his inquiry as to how much the value was the court sustained an objection to it.

At the hearing of a motion for a new trial Mr. Jelf was again called to the witness stand and testified that the property was carried on the assessment rolls for 1943 at the value of $650 with the constitutional exemption of $200 leaving the value as $450. In view of the plaintiffs' testimony at the time of the trial that the property was worth a dollar more at the time of the explosion than it was at the time he gave it in for taxes, we think this evidence should have been admitted on the question of value. The jury found the value of the contents of the house to be $1,950. The refusal to admit this evidence was error on the part of the trial court.

Mr. Jelf testified as to the value of the personal property. He also testified that he reached his conclusion from the standpoint of replacement cost of the property rather than its actual value. The admission of this evidence was error.

Ordinarily these errors would only require that the case be reversed and a new trial ordered on the question of damages. However, after an examination of the entire record we are of the opinion that the rights of all parties could be more fairly adjudicated by a new trial generally.

The judgment is reversed with directions to grant defendant a new trial of all issues.