JOSEPHINE BOYCE,

*Plaintiff and Appellant,*

vs.

NORTHERN UTILITIES COMPANY, a Corporation, VETA L. LAMOUREUX and IZETTA G. LAMOUREUX,

*Defendants and Respondents.*

(No. 2703; May 23rd, 1956; 297 Pac (2) 820)

For the plaintiff and appellant, the cause was submitted upon the brief and also oral argument of W. J. Wehrli of Casper, Wyoming.

For the defendant and respondent, Northern Utilities Company, the cause was submitted upon the brief of Murane & Bostwick of Casper, Wyoming, and oral argument by E. E. Murane.

For the defendants and respondents, Vetal L. Lamoureux and Izetta G. Lamoureux, the cause was submitted upon the brief of Loomis, Lazear and Wilson of Cheyenne, Wyoming and oral argument by James O. Wilson.

504

# OPINION

*Parker*, Justice

Plaintiff Josephine Boyce sued Vetal L. Lamoureux and Izetta G. Lamoreux, apartment house owners, and Northern Utilities Company, supplier of gas, to recover damages for injuries sustained in a gas explosion on August 19, 1952, in the apartment where she lived at 244 South Lincoln Street, Casper, Wyoming. The jury returned a verdict in her favor and against Northern Utilities Company in the amount of $17,500, but against her and in favor of the apartment house owners. A motion for judgment notwithstanding the verdict filed by the utilities company was granted and thereupon judgment was entered against the plaintiff and in favor of all defendants.

A review of the record discloses various preliminary information which is uncontroverted. Plaintiff had occupied a small, ground floor, Lamoreux apartment for many years; and the defendant utilities company had supplied all of the tenants in the area with gas. Plaintiff's rent payment covered the cost of steam heat, hot and cold water, and gas. The gas kitchen stove was the same that had been used in 1935. On the day of the accident, she was indisposed and had remained in the apartment all day, dressed in her nightgown, sewing, reading, and occasionally lying down. The weather was warm and plaintiff, according to her custom, had kept the doors and windows closed because, as she explained, it kept the apartment cooler. Between five-thirty and six o'clock, she arose to go to the bathroom and en route struck a match to light a cigarette when a "terrific" explosion occurred. Her nightgown was burned and she was stunned. There was flame and fire immediately after the explosion. She called to a neighbor, opened the door, secured help,

and was later taken to the hospital. The explosion, the main force of which was in the kitchen, blew a hole in the ceiling of that room, damaged the entire apartment, scorching the paint, searing the clothing, and lifting the roof of the building. The force of the explosion and the damage which occurred are not especially in issue since it is admitted by all parties that there was a serious explosion and substantial injuries to the plaintiff.

The responsibility for the explosion, however, is another matter, and is seriously contested by the parties. Although an outline of the further overall picture does not at this time require a segregation of the evidence presented by the successful and the unsuccessful parties, we should hereafter note the identity of the person testifying so that proper evaluation of such testimony may be made at the time plaintiff's views are discussed.

Some witnesses stated that at various times prior to the explosion there had been a gas smell in the basement of the apartment house while others said that there was no such smell there. All testimony on this subject becomes unimportant since no proof was adduced to show that the gas causing the explosion came from the basement and there was some evidence indicating that it did not.

On May 7, 1952, plaintiff called Mrs. Landon, the caretaker, and told her she thought gas was leaking in her apartment. The next day Fred Jones, a serviceman of the utilities company, came out and saw Mrs. Landon, who directed him to plaintiff's apartment to adjust the stove in plaintiff's kitchen. He tested the pipes for leaks, using soapy water and inspected the three burners on the old stove and said he found a "pretty heavy yellow flame" throwing off "a pungent

odor [of] partially combusted gas." He said he adjusted the air and the gas to the right mixture and found "one valve handle [the left], or valve core, with a pin broken off of it." He said that when he told plaintiff it was broken, that the cost of the valve and time would run around $4 to $4.50, and asked if she wanted it replaced, plaintiff answered that "it wasn't her stove and that she wasn't going to pay for any repairs on it, and she had used it that way for a good many years, and she knew exactly how to handle it." Plaintiff denied any such conversation and said Jones "didn't say a word about that to me * * * he just said to keep it [the left burner] that way [parallel with the stove] and that would be all right." From that time on plaintiff did not smell any gas to and including the day of the explosion. Plaintiff said that on August 18, 1952, the day prior, she did not cook supper; and on August 19, 1952, she did not use the stove but ate cold meals. The source of the gas leak which caused the explosion is not certain; and the testimony of Don Blanford, a gas fitter for the Northern Utilities Company might be interpreted differently by the various persons who heard the testimony or have read the record thereof. According to Blanford's testimony, he went to plaintiff's apartment about six o'clock, August 19, 1952, soon after the explosion, saw M. H. Hool, Captain and Acting Chief of the Casper Fire Department, who was already there, and they made an inspection of the three-burner stove. Asked if he made any observation of the handles of the stove, Blanford answered: "When we first went in, why, I was looking to see if there was anything that was dangerous and continued to be dangerous, so I automatically looked for anything to turn off, and looked like one handle was partly on and I turned it off. That would be the right burner on the top of the stove, I think." When

asked if he made further investigation, he replied: "We did. I checked the handles to be sure they were all turned off, and one of them kind of wobbled around and turned either way, but I turned it to be sure it was parallel with the manifold of the stove so it would be sure to be in the 'off' position. * * * it didn't have the stop pin in the one valve, but you had to turn it in the 'on' position to turn it on." Later in speaking of the right hand burner of the stove he said: "It was turned in the open position, towards the front. * * * I couldn't say exactly how far. It was approximately enough towards the front that I would say it was on." The position of the stove valve handles is further confused by the testimony of James D. Gray, Captain of the Casper Fire Department, who testified "I had a call at 5:55 that there was a gas explosion * * * [and I went] within seconds * * * I couldn't find any leaks. I match-tested it, the valves. * * * I didn't close any valves, but I didn't find any valves open or anything, but I did match-test it with a match to see if I could find any leaks * * *." He said that *after* he had made the test he turned the valve, found that the gas would go on, and could smell the normal gas used in the Casper systems.

Hool, when asked about the stove handles, said: "I found one there on the right. I think there was a tea kettle, or something, boiling—to boil water in that was on the stove, and that handle had protruded out to a little angle from the stove, away from the stove. * * * It would be towards 'on' position. * * * there was one handle there that didn't have any stop on it. It would go completely around—what I mean, back to the stove and come back that way. There was no stop on it. * * * Mr. Blanford and I was there at the time. We noticed that the handle was out, and I think Mr. Blanford moved it to an 'off' position. Continuing,

Hool said that Gray's match-testing of the stove was *after* Hool and Blanford were there.

In her pleading plaintiff stated that in May 1952 the utilities company inspected the gas leak in her kitchen and carelessley performed the work of repairing the stove and pipes. Plaintiff alleged further that on August 1952 and prior thereto gas escaped from the pipes conveying it to the meter and from the meter to the stove; that both the stove and the pipes were old, outworn, and in need of repair; that gas leaked and escaped into the basement of the apartment house; and that it leaked from the stove. No substantial evideence of any leak in the pipes from the main to the meter was proved and plaintiff has presented no argument in this regard. As above indicated, the plaintiff did not offer evidence to show that the gas causing the explosion came from the basement and has not argued that point. Her philosophy throughout the argument has been that the handle to the left valve was defective for lack of a pin, that the defendant utilities company should have repaired this valve and did not, and that the gas causing the explosion escaped because of this defect, through the fault of the utilities company and without the fault of plaintiff.

Plaintiff specifies as error:

(1) The sustaining of the Lamoreux motion to require the separte statement and numbering of several causes of action.

(2) The refusal to give Instruction No. 1 defining negligence.

(3) The refusal to give Instructions No. M and N relating to the high degree of care required of a gas company.

(4) The giving of Instruction No. 5 relating to proof essential to a judgment.

(5) The giving of Instruction No. 6 relating to the nonobligation of Mr. and Mrs. Lamoreux to make repairs.

(6) The submission of the "Special Findings of Fact."

(7) The sustaining of the "Motion for Judgment Notwithstanding the Verdict" of the defendant utilities company.

(8) The entering of judgment in favor of Mr. and Mrs. Lamoureux and against plaintiff.

(9) The entering of judgment in favor of defendant utilities company and against plaintiff.

Plaintiff's argument in the brief is presented under three headings: (a) the trial court's error in sustaining the utilities company's "Motion for Judgment Notwithstanding the Verdict," (b) this court's obligation to direct the entry of judgment for plaintiff and against the utilities company on the general verdict (without a further trial), and (c) the trial court's error in giving Instructions No. 5 and 6 and refusing Instructions No. L, M, and N. We shall in general follow the order of treatment set out in the brief.

In urging the error of sustaining the "Motion for Judgment Notwithstanding the Verdict," plaintiff cites Northwest States Utilities Company v. Brouilette, 51 Wyo. 132, 65 P.2d 223, 69 P.2d 623, and its companion case, Northwest States Utilities Company v. Ashton, 51 Wyo. 168, 65 P.2d 235, 69 P.2d 623, as holding "that a gas company is liable when gas escapes from the consumer's pipes or appliances after notice of leak or escape, and failure to repair." Plaintiff also quotes 38 C.J.S. 734:

"If leaks occur through the fault of the company, it is liable without actual notice for any resulting injury, but, where the leak is due to other causes, and the

company has used proper care in inspecting its pipes, liability does not attach until the company has had notice and a reasonable time to repair after which it is liable even though the pipe where the leak occurred was owned by the consumer."

To the same general effect are the holdings in numerous citations most of which are collected in one or the other of the Annotations found at 25 A.L.R. 262, 29 A.L.R. 1250, 90 A.L.R. 1082, 138 A.L.R. 870. The cases therein cited include Scarborough v. Central Arizona Light & Power Co., 58 Ariz. 51, 117 P.2d 487, 138 A.L.R. 866; Baker v. Kansas Power & Light Co., 146 Kan. 258, 69 P.2d 731; and Atkinson v. Wichita Gas Co., 136 Kan. 854, 18 P.2d 127.

At the outset, we should note this court's statements in the Brouilette case, indicating its approval of the jury's conclusion that the gas escaped from defective pipes after notice t othe gas company of the leak:

"* * * On the other hand, there is the evidence of many witnesses that natural gas was constantly smelled in the basement * * *. So, we think the jury not only had a right to find it was natural gas explosion, but the weight of the evidence was to that effect.

* * * * *

"* * * The jury, then, by their answers to the interrogatories propounded by the court found the substance that exploded was defendant's natural gas, that it escaped from a leak in the basement; and that it escaped because of want of repair by the defendant. * * *" Northwest States Utilities Company v. Brouilette, 51 Wyo. 132, 152, 155, 156, 65 P.2d 223, 229, 230.

Without presently discussing these authorities further, we may say that no substantial issue is raised by the briefs on this point; and we can agree generally with plaintiff's stated thesis "that a gas company is liable when gas escapes from the consumer's pipes or appliances after notice of leak or escape, and failure to repair."

The crucial question in the present case is: Did plaintiff prove that the gas escaped from the appliance as a result of the defect in the control handle of the left valve? When we pursue the subject of "Injuries Incident to * * * Operation of Gas Works," 38 C.J.S. 726 ff. (p. 734 cited by plaintiff, we find further on in the same general discussion (pp. 745, 746) the following language which must be read in connection with the portion which plaintiff quotes:

"In an action for injury resulting from an * * * explosion of gas, the burden of proof rests on plaintiff to prove the facts constituting his cause of action. Hence plaintiff must prove that * * * such gas * * * escaped through the negligence of the company * * * and that defendant's negligence proximately caused the damage. * * *

"The burden shifts to defendant when plaintiff has established a prima facie case of negligence, but not until then * * *."

citing York v. North Central Gas Co., 69 Wyo. 98, 237 P.2d 845. This case, on one of the points considered, contains a statement peculiarly applicable in the instant situation (p. 850):

"* * * To establish *actionable* negligence plaintiffs had the burden of proving * * * that the break in the line was due to defendant's lack of care (the negligence question) * * *."

We must therefore apply the York case rule to the evidence presented in the present action. Plaintiff contends "there is ample testimony supporting the finding of the jury that the gas which exploded came from the defective valve as the result of lack of the stop pin," and we accordingly search the record to ascertain what such testimony is.

We find no evidence of this, except the testimony of the witness Blanford who said: "I checked the handles to be sure they were all turned off, and one

of them kind of wobbled around and turned either way, but I turned it to be sure it was parallel with the manifold of the stove so it would be sure to be in the 'off' position," and later admitted that "they do put stop pins in them if they are in good condition." There is a total lack of testimony, either opinion or otherwise, to the effect that the stove valve without the stop pin was defective, in that *it leaked gas*. Such a deficiency is fatal, even under the authorities which plaintiff has cited.

The jury's note to the court that "both the plaintiff and the defendant have *not* presented sufficient evidence to fully and completely determine from which burner the gas was escaping," sent, as it was, during the deliberations, indicates that the jury felt this shortcoming which is now so apparent.

Plaintiff's theory of the case has not embraced the doctrine of res ipsa loquitur, nor could it have under the views expressed in Stanolind Oil & Gas Co. v. Bunce, 51 Wyo. 1, 62 P.2d 1297, and Rafferty v. Northern Utilities Company, 73 Wyo. 287, 278 P.2d 605. Without the benefit of this doctrine, an absolute prerequisite of a finding for plaintiff was the production of evidence showing that gas either *did escape* or *could have escaped* from the left burner. A search of the record discloses no such evidence, unless we interpret the rather indirect statements of Blanford that the valve was not in "good condition" (because it lacked the stop pin) and that it "kind of wobbled around and turned either way," to mean that the valve leaked gas. Such statements were not made and the inference is not justified. A defect in an instrument, even though the instrument be used in connection with a dangerous substance, does not warrant the inference of a causal relation between the defect and an injury. The causal relation must be proved.

Under the above-stated rule in York v. North Central Gas Co., supra, plaintiff in this case presented to the jury no substantial evidence on which it could base either (a) the special finding that the gas came "from the valve or burner operated by the handle on the left side of said stove due to the lack of a stop-pin in such valve or handle" or (b) the general verdict in favor of plaintiff.

In arriving at our conclusions as above stated, we are not unmindful of the rule in Hefferin v. Scott Realty Co., 71 Wyo. 114, 254 P.2d 194, that in considering a motion for judgment notwithstanding the verdict the testimony must be read in the light most advantageous to the party for whom the jury has found.

Wyoming cases dealing with other phases of review are cited by plaintiff to the effect that (a) this court must accept as true the evidence of plaintiff with the reasonable inferences that may be made therefrom; (b) we must assume the evidence in favor of the successful party is true, leaving out of consideration entirely the evidence of the unsuccessful party in conflict therewith; (c) the evidence must be interpreted most strongly against the movent; (d) plaintiff's unfavorable evidence, if any, must be disregarded and the case decided on the evidence most favorable to her position. Even if for the purpose of review we should assume all of these rules to be applicable, there would still be no evidence in the record that gas did or could escape through the left valve. It therefore becomes unnecessary to analyze the cases cited on this point.

We pass to the next subject discussed by plaintiff, viz., "actually the jury did not find the gas was adequately odorized." The jury in its special finding said that the gas was "adequately odorized so that it could

be detected by a normal person using ordinary care." Plaintiff excepted to the submission of this finding to the jury, urging that the use of the word "normal" was improper. Counsel now continues the argument by assuming that the tests regarding negligence pertain to the "ordinary" person and by citing a case to define what an "ordinary" person is. We think this view is not well taken. A normal person cannot be other than an ordinary person. Normality is a condition which is generally, usually, or ordinarily found to be present in the majority of people. Just as soon as a condition is found to be generally, usually, or ordinarily present in a majority of human beings, that condition is accepted as being normal. It serves no good purpose to permit subtleties or refinement of words to confuse meanings which are in common parlance well understood by the general public of which juries are composed. Moreover, it is unnecessary in this case to determine the odorization problem in the field of definition.

Gas companies in an effort to exercise care and diligence have adopted the practice of impregnating gas with an odor definitely distinguishable and recognizeable by a person with an unimpaired sense of smell. If we assume that the utilities company was obligated to place a malodorant in the gas (on which point plaintiff cited no authorities), we nevertheless find that there was evidence in the record that the odorization was noticeable and offensive, and there was essentially no evidence to the contrary.

The testimony of nonodorization on which plaintiff relies is that of Gray that it was "the smell of the normal gas that is used in the systems throughout Casper," that of Blanford that it was "the ordinary gas odor," and that of Hool that he "never smelled any odor of gas [in the kitchen]." No witness having

testified that the gas was unodorized, an analysis of all testimony indicates that there was no substantial evidence to support a verdict for plaintiff or justify a finding of nonodorization. Accordingly, even if the wording of the special finding were improper, it could not have prejudiced the plaintiff.

A question very similar to the claimed improper wording of the special findings is raised by plaintiff's objections to Instructions No. 5 and 6 and the urged error in the refusal of Instructions No. L, M, and N. Since plaintiff has failed to meet the essential burden of proof warranting a verdict and a judgment in her behalf, she cannot be harmed by either (a) the submitting of an improperly worded special finding, (b) the giving of an improper instruction, or (c) the refusing of a proper instruction. See 3 Am.Jur. 635, 5 C.J.S. 1092 ff. The evidence presented was insufficient to allow the plaintiff to recover, *regardless* of what the general verdict or the special findings of the jury might have been. Any error addressed to the instructions or the jury questions is harmless. This court can reverse only for prejudicial error appearing in the record. Stockgrowers' Bank of Wheatland v. Gray, 24 Wyo. 18, 154 P. 593; Tompkins v. Byrtus, 72 Wyo. 537, 267 P.2d 753.

In the light of our views as above expressed, the question of plaintiff's contributory negligence becomes immaterial and requires no discussion. Nor, under these circumstances, could this court direct the entry of judgment in her favor as requested.

We have not discussed the legal situation of the landlords, but it is axiomatic that there could be no recovery against them if the proof submitted is as insufficient against them as it is insufficient to justify a judgment against the utilities company. Further-

more, the alleged error of the court in requiring plaintiff to separately state and number causes of action is of no moment.

As we have indicated, plaintiff failed to show that negligence of the defendant utilities company caused the escape of gas and that such negligence was the proximate cause of the injuries sustained. The trial court was therefore justified in granting the motion of the defendant utilities company for a judgment notwithstanding the verdict.

*Affirmed.*

BLUME, C.J., and HARNSBERGER, J., concur.