THOMAS J. GRINGS et ux., appellees, v. GREAT PLAINS GAS COMPANY, and CLARENCE D. DUFFE, d/b/a Duffe Oil Company, appellant.

GREAT PLAINS GAS, a division of National Propane Corp., cross-petitioner, v. CLARENCE D. DUFFE, d/b/a Duffe Oil Company, cross-defendant.

No. 52427.

(Reported in 152 N.W.2d 540)

1310

August 31, 1967.

McCracken & Carlin, of Davenport, for appellant.

Tomasek & Vogel, of Grinnell, and Frank A. Gillett, of Wilton Junction, for appellees.

STUART, J.—Plaintiffs' home and most of its contents were destroyed by fire September 18, 1963. They brought action against defendants alleging the fire was caused by their negligent acts. The case was tried to the court. The court dismissed the action against Great Plains Gas Company and awarded plaintiffs judgment against defendant Duffe on both the theory of res ipsa loquitur and specific negligence. Duffe has appealed and will be referred to as defendant.

I. Defendant claims there was insufficient evidence to sustain the court's finding of specific negligence and causation. We review the evidence and the inferences that may be drawn therefrom in the light most favorable to plaintiffs and will affirm if the trial court's findings are supported by substantial evidence. Rule 344(f) (1) (2), Rules of Civil Procedure.

The Grings owned, operated and lived on a farm southwest of Wilton Junction in Muscatine County. The residence was a large two-story frame dwelling built in 1915. The kitchen was to the rear or north side of the house. An LP gas stove in the kitchen was served by two regular gas cylinders or tanks located 4 to 6 inches outside the north wall. The stove was against the south wall of the kitchen and a copper tube ran from it under the floor, through a crawl space, through the sill to a regulator on the stand which held the two gas cylinders. An electric refrigerator and deepfreeze were located along the north wall in the kitchen opposite the cylinders. Plaintiffs had had no trouble with the stove since it was installed in 1954. There were no other gas appliances in the house.

On the morning of September 18, 1963, plaintiffs left for their son's home about 11:45. There were no unusual incidents with either the gas or electricity.

About 1 p.m. while plaintiffs were gone, defendant, an LP gas dealer, delivered a tank of gas to their home. When he arrived he noticed nothing unusual around the residence. He did not smell gas. He shut off the empty cylinder and removed it, using a crescent wrench to loosen the compression nut on the tubing extending from the regulator to the valve on the cylinder. He then attached the full tank in the same manner and turned on the valve.

Defendant customarily tested for leaks by brushing a soapy solution on the connection and watching for bubbles. This is a standard test regarded as a minimum safety requirement. This morning he had spilled the solution and he tested for leaks only by smelling for gas and listening for a leak. He thus determined there was none.

He left plaintiffs' home about 1:15 and everything appeared to be normal at that time. Very shortly thereafter plaintiffs returned home. They could see smoke when they were ¾ of a mile away. When they reached the back or north side of their home, they saw flames about 4 inches in diameter and 2 to 2½ feet in height shooting straight up out of the cylinders. The siding directly behind them was on fire in a circular area of about a 3- or 4-foot radius extending upward from a point about a foot below the top of the cylinder. There was a second area of flames under the eaves and along the second-floor area directly above the tanks. All flames were confined to the sheeting and siding.

In the kitchen there was much smoke but no fire. When the smoke cleared as the deepfreeze was being removed, the north wall of the kitchen was normal. There was no evidence of an explosion.

Testimony and pictures show that the center of the fire was in the north wall directly behind the tanks and extending outward and upward into the second floor and roof. The damage was so extensive the house had to be demolished.

The Wilton Junction Fire Chief, an electrician, investigated the cause of the fire and found no electrical defects. In his opinion the fire was caused by a gas leak ignited by a spark

from the relay in the refrigerator. His opinion was based on the absence of any other cause.

Roy Staschke, another member of the Wilton Junction Fire Department, is in the refrigeration business. He was familiar with this model refrigerator and testified the relay would arc or produce sparks 9 out of 10 times when it "cycled".

A long hypothetical question reciting facts in much greater detail than set out above was propounded to two qualified experts, Ed J. Herron, former state fire marshal and Dr. Lionel K. Arnold, professor of chemical engineering at Iowa State University in Ames, who for many years has been doing consulting work and writing in the area of fires and their causes, with particular emphasis on gases involved in fires and explosions. Both gave an opinion that the fire was caused by gas which leaked from the connection with the newly installed cylinder, seeped into the kitchen and was ignited by a spark from the relay of either the refrigerator or deepfreeze. The flame flashed back to the spot of the leak causing the fire which in turn increased the heat to the point where the safety valves popped allowing more gas to escape and ignite. In their opinions the leak was probably caused by an improper tightening of the compression nut. It was either too loose, so tight it cracked or cross threaded.

The trial court found defendant was negligent in three particulars: (1) in failing to properly connect an LP gas cylinder, (2) in failing to properly test the system for leaks after changing cylinders, and (3) in failing to discover the gas leak after installing the new cylinder.

Defendant does not contend there was insufficient evidence to establish the second and third negligent acts. However, there would have been no causal connection between such negligence and the resulting injury if there was no evidence from which the trier of fact could conclude the gas cylinder was so improperly connected by defendant that it permitted gas to escape. Defendant says there is no evidence of any defect in the line and that plaintiffs failed to establish defendant's negligence as the proximate cause.

■ ■ · His brief points and cases relate to limitations on inferences which may be raised by res ipsa loquitur. As res ipsa loquitur may not be invoked in aid of specific charges of negligence, Eaves v. City of Ottumwa, 240 Iowa 956, 38 .N.W.2d 761, 770, 11 A. L. R.2d 1164, any inferences arising therefrom cannot be used to aid plaintiffs' case on specific acts of negligence. The cited cases also stand for the proposition that the instrumentality which caused the injury must be established before a causal connection can be made to the negligent acts. Rauch v. Des Moines Electric Co., 206 Iowa 309, 218 N.W. 340; Rollins v. Avey, Ky., 296 S.W.2d 214; Emigh v. Andrews, 164 Kan. 732, 191 P.2d 901.

■ There is no direct proof that the tube and compression nut were not properly connected with the valve on the cylinder. However, specific negligence and proximate cause may be proved by circumstantial evidence without resorting to res ipsa loquitur in instances where the doctrine might not apply. Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 769, 11 A. L. R.2d 1164; Shinofield v. Curtis, 245 Iowa 1352, 66 N.W.2d 465, 470, 50 A. L. R.2d 964; Mickelson v. Forney, 259 Iowa 91, 143 N.W.2d 390, 393. Jelf v. Cottonwood Falls Gas Co., 160 Kan. 112, 160 P.2d 270, 275.

■ "* * * [I]n such case the evidence must be such as to make plaintiffs' theory of causation reasonably probable; not merely possible, and more probable than any other theory based on such evidence. It is not necessary that the testimony be so clear as to exclude every other possible theory. [Citing cases]" Shinofield v. Curtis, supra, loc. cit. 1357 of 245 Iowa, 468 of 66 N.W.2d.

■ We are satisfied the circumstantial evidence here was sufficient to raise a jury question as to causation and defendant's negligence in failing to properly connect the tank to the· tube. There were only a very few minutes between the time defendant left until plaintiffs returned home. There was nothing wrong at the residence when defendant left. The tanks and the·house were on fire when plaintiffs arrived. The fire was on the outside of the house and was in such position that it obviously started at the cylinders. Plaintiffs had had no trouble with the stove.

There was no evidence of explosion or origin of a fire in the kitchen. Inspection eliminated the possibility of an electrical fire. All sources other than a gas leak were effectively negated. The only alteration in the gas system was the installation of the full cylinder. The only part of the system disturbed in such change was the connection to the valve on the tank.

Experts expressed opinions that the failure to make a proper connection was the source of the gas leak. Defendant's own conduct shows his concern over the matter. At first he denied being at the farm and changing cylinders that day. Later on he admitted he had done so. At the same time he contacted his gas supplier and asked for an investigation because of the possibility gas caused the fire.

Defendant makes much of the failure of plaintiffs and plaintiffs' experts to examine the cylinder, tubing and compression nut connection after the fire claiming this would have shown whether the nut was cracked or cross threaded. This is a jury argument which under the facts here is just as damaging to defendant. Within a day or so after the fire he took possession of this equipment and kept it. During trial he offered no evidence as to the condition of the connection in his defense.

The evidence offered here is more than adequate to engender a fact question on all three allegations of negligence found to have been established by the trial court as well as proximate cause. See Clay v. Butane Gas Corp., 151 Neb. 876, 39 N.W.2d 813; Jelf v. Cottonwood Falls Gas Co., 160 Kan. 112, 160 P.2d 270, 275, 276; Grinnell v. Carbide & Carbon Chemicals Corp., 282 Mich. 509, 276 N.W. 535, 540; Davidson v. American Liquid Gas Corp., 32 Cal. App.2d 382, 89 P.2d 1103; Breed v. Philgas, 118 Conn. 128, 171 A. 14; Richey & Gilbert Co. v. Northwestern Natural Gas Corp., 16 Wash.2d 631, 134 P.2d 444.

Defendant cited the following cases: Rollins v. Avey, Ky., 296 S.W.2d 214; Johnson v. Latimer, 180 Kan. 720, 308 P.2d 65; Wightman v. Mountain Fuel Supply Co., 5 Utah 2d 373, 302 P.2d 471; Rural Natural Gas Co. v. Arvin, Ky., 270 S.W.2d 610; Niswander v. Kansas City Gas Co., Mo. App., 181 S.W.2d 165; Spruell v. Georgia Automatic Gas Appliance Co.,

84 Ga. App. 657, 67 S.E.2d 178; Boyce v. Northern Utilities Co., 75 Wyo. 500, 297 P.2d 820. All but Boyce involve res ipsa loquitur rather than specific negligence and in all instances the circumstantial evidence establishing proximate cause was much less satisfactory. Rollins v. Avey is the closest factually. There plaintiff made no effort to eliminate another supply of gas as a possible cause. Here additional facts and circumstances pinpointed gas escaping from the tanks as the cause.

■ II. Defendant claims the hypothetical question propounded to plaintiffs' experts and their answers were improper. He does not challenge the evidentiary matters contained therein and in fact used the same question himself. It is supported by the record. He claims there is no evidence in the record upon which the experts could express an opinion as to the cause of the fire. We believe the circumstantial evidence reviewed above provided a sufficient basis for expert opinions.

■ His main argument is directed toward the opinion as to the source of ignition. He claims the opinion that the gas seeped into the kitchen and was ignited by a spark from a relay in the refrigerator or deepfreeze and flashed back to the tanks is unbelievable and contrary to physical facts and does violence to scientific principles. Doctor Arnold explained in detail how this could happen. His credibility was for the trier of fact as was that of the other experts.

■ Furthermore, the actual source of the ignition was not essential here. It was important to show there was a possible way in which ignition could have occurred to help establish that the fire was caused by leaking gas, but under the allegations of negligence, there was no necessity of proving one source of ignition was more probable than any other. Richey & Gilbert Co. v. Northwestern Natural Gas Corp., 16 Wash.2d 631, 134 P.2d 444, 448; Jelf v. Cottonwood Falls Gas Co., 160 Kan. 112, 160 P.2d 270, 277.

We believe the hypothetical question and the opinions based thereon were properly received into evidence and considered by the court.

■ ■ III. As noted above, the trial court found for plaintiff both on the res ipsa loquitur and specific negligence.

We have previously held it is not error to submit both counts to the trier of fact. Eaves v. City of Ottumwa, 240 Iowa 956, 38 N.W.2d 761, 768, 11 A. L. R.2d 1164; Rauch v. Des Moines Electric Co., 206 Iowa 309, 313, 218 N.W. 340; Davidson v. American Liquid Gas Corp., 32 Cal. App.2d 382, 89 P.2d 1103, 1105. Defendant argues it is inconsistent for the trier of fact to find for plaintiff on both counts and such finding constitutes reversible error. We agree that a finding in favor of plaintiff on both counts is inconsistent. Res ipsa has no application when there is proof of the precise cause of the injury. Eaves v. City of Ottumwa, supra. However, defendant was not prejudiced thereby. Plaintiffs only had to prove one of the two counts in order to prevail. We have already determined there was sufficient evidence to support the trial court's finding in their favor on the count charging specific acts of negligence. This finding is not affected by the fact that he may have inconsistently applied res ipsa loquitur in the other count. Such finding was mere surplusage.

IV. For the same reason we need not consider whether the facts here called for the application of the doctrine of res ipsa loquitur.

V. Plaintiffs' petition alleged "that the above claims are the sole property of the plaintiffs * * * and no part thereof has been paid." Defendant denied this allegation.

On direct examination Mr. Grings testified he prepared a list of the personal property destroyed by the fire at the direction of his insurance company. On cross-examination he was asked "if he had insurance on the house and buildings. The trial court sustained the objection that it was incompetent, irrelevant and immaterial."

Mr. Grings testified on further direct examination he and Mrs. Grings own the claim involved in this lawsuit arising out of the destruction of their home. On cross-examination he was asked: "Was any of this amount you claimed, any or all of it paid by insurance?" The same objection was again sustained.

Defendant claims the trial court erred in thus refusing to permit him to inquire whether plaintiffs were the real parties in interest. In support of his contention he cites R. C. P. 2:

"Every action must be prosecuted in the name of the real party in interest. * * *." He also cites Johnson v. Johnson, 245 Iowa 1216, 1219, 1220, 65 N.W.2d 157. There defendant sought on direct and cross-examination to find out whether someone had paid plaintiffs money and further whether they had any interest in the pending action. The trial court held the "question of subrogation was not a proper matter for the consideration of the jury and that it had nothing whatsoever to do with that proposition in determining the liability of the defendant."

We held the court erred in refusing to let defendant inquire whether plaintiff had a present interest in the cause of action and pointed out that defendant by answer alleged plaintiff was not the real party in interest. Plaintiffs attempt to distinguish it from the instant case on the basis of such pleadings. However, we believe the issue was as effectively joined here when defendant denied plaintiffs' ownership of the claim. The Johnson case appears to be directly in point and must be considered. The only authority referred to in the opinion is R. C. P. 2. The cases of Allen v. Barrett, 100 Iowa 16, 69 N.W. 272, 273; Caligiuri v. Des Moines Railway Co., 227 Iowa 466, 469, 288 N.W. 702; Rursch v. Gee, 237 Iowa 1391, 1397, 25 N.W.2d 312, 315; Van Wie v. United States (Iowa), 77 F. Supp. 22, 32, cited by plaintiffs here, which would tend to lead one to the opposite conclusion, were not discussed.

In the Johnson case we did not consider whether the loss exceeded the insurance paid nor were we called upon to determine how defendant was prejudiced by the court's ruling.

In all of the cases cited by plaintiffs, the loss exceeded the insurance paid, thus, insured had a monetary interest in the outcome of the lawsuit. These cases indicate Iowa is in line with most jurisdictions which hold that under such circumstances the insured is the real party in interest and must bring the action to avoid splitting the cause of action. See annotations, 96 A. L. R. 879, 157 A. L. R. 1251, and City of New York Ins. Co. v. Tice, 159 Kan. 176, 152 P.2d 836, 157 A. L. R. 1233.

There is a far greater division of authorities under statutes requiring an action to be brought by the real party in interest when the loss does not exceed the insurance paid. 96 A. L. R.

1320

875, 878, 157 A. L. R. 1247, 1250. Defendant contends plaintiffs were not the real parties in interest if they were fully indemnified for their loss and that he was entitled to ask questions to determine this fact.

However, we do not reach that specific question for we are unable to see how defendant was prejudiced. The trier of fact should not be concerned whether an insurer has been subrogated as indemnitor to all or part of the claim against a tort-feasor. It in no way should affect his liability, but such knowledge might have a prejudicial effect. Caligiuri v. Des Moines Ry. Co., 227 Iowa 466, 469, 288 N.W. 702; Rursch v. Gee, 237 Iowa 1391, 1397, 25 N.W.2d 312.

In Hume v. McGinnis, 156 Kan. 300, 303, 133 P.2d 162, 164, the Kansas Supreme Court said: "After a study of the two recent cases that are relied on by the parties in this case we have reached the conclusion that there is no real reason for the distinction that has crept into the law whereby in a situation of this sort the action should be brought in the name of the insured when the loss is only partly paid and in the name of the insurer if the loss is fully paid. It is really no concern of the tort-feasor in whose name the action is brought just so he will not be compelled to pay twice for the same loss."

" 'Damages recoverable for a wrong are not diminished by the fact that the party injured has been wholly or partly indemnified for his loss by insurance effected by him, and to the procurement of which the wrongdoer did not contribute; and this is equally true * * * though the insurance company, by reason of having paid the loss, is entitled to be subrogated to the rights of the insured as against tort-feasor, or to recover back from him the amount he recovers. The question who will be entitled to the proceeds of the recovery, the insurer or the insured, is a matter between them, and constitutes no defense to an action for the damages caused by the wrong which, in any event, must be brought in the name of the insured owner although it might be for the use of the insurer.' " Loggie v. Interstate Transit Co., 108 Cal. App. 165, 169, 291 P. 618, 619, 620.

Defendant may question whether plaintiff is the real party in interest when it is necessary to protect him from

"harassment, annoyance, or vexation at the hands of other claimants to the same demand or for the same cause, or to protect himself from another suit on the same cause by a different party. * * * or in order that defendant may avail himself of the defenses and counterclaims which he has against the real party in interest, * * * or in order that defendant's payment to plaintiff or plaintiff's recovery as against him will fully protect him from claims of third persons or in the event of another action on the same cause. On the other hand, if such defenses and counterclaims are open to defendant as against plaintiff, and defendant is fully protected against further liability on the same cause of action, defendant may not object on the ground that plaintiff is not the real party in interest." 67 C. J. S. 910, Parties, section 10. See Home Indemnity Co. v. State Bank, 233 Iowa 103, 134, 135, 8 N.W.2d 757; White v. Chicago N. W. Ry. Co., 145 Iowa 389, 393, 124 N.W. 162.

Under the facts here, insurer is in no position to start a separate action in its own name and defendant will not be subjected to double liability or multiplicity of lawsuits. He was not prejudiced by the ruling of the trial court which sustained objections to the questions set out at the beginning of this division. We consider this aspect of the question, not discussed in Johnson v. Johnson, supra, to be determinative.

For the reasons stated above, we affirm.—Affirmed.

All JUSTICES concur except LEGRAND, J., who takes no part.