**Nels Gunnar LARSON, Plaintiff-Appellee,**

v.

**The DeVILBISS COMPANY, a foreign corporation, Defendant-Appellant.**

**No. 71–1017.**

United States Court of Appeals,
Seventh Circuit.

Dec. 16, 1971.

Richard E. Rosenberg, Janesville, Wis., for defendant-appellant.

James E. Brennan, Janesville, Wis., for plaintiff-appellee.

Before CASTLE, Senior Circuit Judge, CUMMINGS, Circuit Judge, and CAMPBELL, Senior District Judge.*

CASTLE, Senior Circuit Judge.

The plaintiff-appellee, Nels Gunnar Larson, brought this diversity action against defendant-appellant, The DeVilbiss Company, to recover for injuries to plaintiff's hand allegedly sustained when an airless spray gun manufactured by the defendant discharged unexpectedly. The complaint alleged, inter alia, that defendant was negligent in the design of the spray gun and in failing to warn of the hazard which resulted in injury to the plaintiff. The cause was tried to a jury which returned a special verdict finding the defendant negligent, that its negligence caused plaintiff's injuries, that plaintiff was not negligent, and that plaintiff's damages amounted to $25,744.95. The court denied defendant's motion for judgment n. o. v. or, in the alternative, for a new trial, and entered judgment on the verdict. The defendant appealed.

The record discloses that at the time of his injury the plaintiff was in the employ of Gilman Engineering Company at Janesville, Wisconsin, as the foreman of Gilman's maintenance department. On or about December 28, 1964, at the request of Gilman, a salesman for the defendant demonstrated its airless spray gun equipment [1] on the Gilman premises.

---

* Senior District Judge Campbell of the Northern District of Illinois is sitting by designation.

1. Airless spray equipment differs from air spray equipment which operates on the principle of atomization—mixing

Harry Coen, Gilman's painter, who works under the direct supervision of the plaintiff was present at the demonstration. The plaintiff, and his supervisor, E. Haglund, were present for portions of the demonstration. Shortly thereafter Gilman purchased a spray gun identical to the one demonstrated from a jobber of defendant's equipment. The gun was first placed in use on February 20, 1965. The related equipment was assembled by Coen and a fellow employee, Albert Cherry. Except for a half hour lunch break at noon, these two men used the gun continuously from approximately 8:00 a. m. until the accident occurred at about 1:15 p. m. Plaintiff did not paint but provided occasional assistance in moving the scaffolding, getting more paint when it was needed, etc. The gun's spray cap became plugged about every half hour. Such plugging is not an uncommon occurrence. Whenever the gun became so plugged it was handed down to the plaintiff who removed the spray cap and cleaned it with paint thinner, using a brush. At about 1:00 p. m. the spray cap became plugged and Coen, who was on the scaffold, handed the gun down to plaintiff with the request that he clean it out. The plaintiff removed the spray cap with a wrench and placed it in a pan of thinner. Paint was dripping from the gun onto the floor. Dripping had not occurred when the spray cap had been removed for cleaning on the previous occasions. The plaintiff placed a shop rag over the gun's fluid tip to prevent further dripping onto the floor. The gun discharged forcing a jet of paint under high pressure into the palm of plaintiff's right hand. The injury necessitated removal of two fingers and a part of the palm.

When the trigger of defendant's airless spray gun is pulled it pulls a needle off the valve seat against spring tension controlled by an adjustment knob. The unseating of the needle permits the paint to emit from the orifice of the fluid tip under high pressure. The paint so jetted from the fluid tip strikes the edges of the spray cap's orifice. This creates the spray pattern. When the trigger is released the combination of the spring tension and the fluid pressure reseats the needle. The gun is equipped with a safety which when set prevents the trigger from being pulled. Plaintiff was unaware that there was such a safety.

Plaintiff testified that he did not pull the trigger. There is no positive testimony that the safety was on at the time of the incident, and the position of the safety was not checked immediately after the gun's discharge. Coen and Cherry continued to use the gun for the balance of the day.

Plaintiff's expert witness, whose qualifications are unchallenged, examined and tested the spray gun here involved. He testified to the effect that if the gun was being used at normal operating pressure but the spring tension on the needle is improperly adjusted so that adequate spring tension is not provided, and the orifice of the fluid tip became partially plugged, the needle would remain offseat; and when the plug dislodged a slug of paint would be extruded at high velocity from the fluid tip during the interval between the clearing of the orifice and the reseating of the needle to close the valve; and that this would occur without the trigger being pulled, and irrespective of the position of the safety. He further testified, in his opinion, that is what occurred to cause the gun to discharge the paint into plaintiff's right hand.

Although a set of instructions customarily supplied with the gun stated that

---

compressed air with paint in the nozzle of the gun to produce a fine spray at a pressure insufficient to create a danger to the human body. Airless spray equipment, however, sends paint to the gun under high pressure (1800 to 3000 lbs. per square inch). When the trigger of

the air-less spray gun is pulled a jet of paint under high pressure is emitted against sharp edges in the gun's spray cap. The velocity of the paint striking the sharp edges on the orifice of the spray cap creates the spray pattern.

the needle adjusting screw should be adjusted so that the total needle travel is from ⅛ to 3/32 inches, there was no calibration on the adjustment device to indicate such limits. Defendant's salesman in demonstrating the use of the gun to Gilman's employees made no mention of the critical nature of such adjustment or the hazard involved. He advised that he used "feel" of the trigger and sought to obtain a snap action rather than a soft action. Also, there was testimony from which the jury could have concluded that the instruction sheets did not arrive with the gun. Plaintiff had not seen them prior to his injury. And, the instructions did not warn of the hazard involved in the failure to properly adjust the screw.

There was evidence from which the jury could have concluded that the gun could have been designed so that when the hazard occurred an automatic check valve would have prevented the extrusion of paint under high pressure, and that an earlier model of defendant's airless spray gun had incorporated such a feature but that its use was discarded because it was subject to wear that could render it inoperative unless replaced.

The principal contention upon which defendant predicates error in the District Court's ruling on its post-verdict motion in the alternative, and bases its request for reversal with direction for entry of judgment in its favor or reversal for a new trial, is that the court improperly permitted plaintiff's expert witness, over defendant's objection, to give an opinion in answer to a hypothetical question. Defendant asserts that the overruling of its objection was error because the question omitted certain necessary assumptions and was based on what defendant characterizes as unproved assumptions. In this connection the defendant urges that absent such erroneously admitted expert opinion testimony there would have been insufficient evidence of negligence in design or of negligent failure to warn to warrant submission of the case to the jury, and the court should have entered judgment for the defendant notwithstanding the verdict.

■ Defendant's objection to the hypothetical question which elicited the expert's opinion as to what occurred to cause the gun to discharge in plaintiff's hand was that the question omitted two necessary assumptions: (1) that the setting on the spring tension adjustment knob or screw was below that recommended in defendant's instruction sheet, and (2) that the plug in the gun was such that it kept the needle off its seat. The court in overruling the objection correctly pointed out that "these matters may be left to cross-examination". Under applicable Wisconsin law trial courts have wide discretion with respect to the admission of opinion testimony of an expert witness. Henthorn v. M. G. C. Corporation, 1 Wis.2d 180, 83 N.W.2d 759. Hypothetical questions are not routinely required and attacks upon the premises upon which expert opinions are based must ordinarily be reached by cross-examination. Rabata v. Dohner, 45 Wis.2d 111, 172 N.W.2d 409, 419.

■ In addition to its objection to the form of the hypothetical question, the defendant contends that there is no testimony which establishes the existence of conditions necessarily assumed as the basis for the expert's opinion. In this connection the defendant argues that there is no testimony with respect to the amount of fluid pressure on the paint, no testimony as to the setting of the spring tension adjustment knob at the time of the accident or that such setting was inadequate, no testimony that the fluid tip orifice was plugged sufficiently to hold the needle offseat or that the plug suddenly dislodged. But the record does not support the defendant in these particulars. There was testimony from which the jury could properly conclude that the pressure on the paint was within the normal operating range of 1,875 to 3,000 p. s. i. The gun was working well. Coen testified that there was no need to make any adjustment on the screw since the gun was giving a

good pattern and "the air pressure would have to be high" to do this. There is no direct testimony as such that the gun plugged in the orifice of the fluid tip at the time of the accident. But there is undisputed testimony that when plaintiff removed the plugged spray cap the gun leaked paint which was dripping to the floor. Plaintiff's expert testified that for such dripping to occur the needle had to be offseat, and that for the needle to remain off-seat the fluid tip orifice must be at least partially plugged. This testimony was based on the tests he made on the gun involved. These tests also disclosed that unless the adjustment screw was improperly set to give inadequate spring tension on the needle the gun would not leak paint at all—the needle would seat and close the valve. Likewise, unless the trigger was pulled, it was only a sudden clearing of the plugged orifice which would cause paint to jet out. Otherwise, the dripping would continue. And there was positive testimony by the plaintiff that he did not pull the trigger.

 The remaining contention relied upon by the defendant as requiring a reversal for a new trial is that the District Court erred in excluding certain exhibits proffered by defendant as being admissible as business records. The admissibility of these exhibits turns on the admissibility of one of them—the initial report made out by plaintiff's supervisor, E. Haglund, two days after the accident. This report indicated that plaintiff received the injury when he "[a]ccidentally pulled trigger on gun". The basis for the admission of this report in evidence was fully explored outside of the presence of the jury, and the trial court, after hearing the testimony given by Haglund with respect to his making such report, ruled that the document was not admissible under the business entry or shop book rule. We perceive no error in this ruling. Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. Moreover, Haglund was unable to identify the source of the information upon which the portion of the report above quoted was based. He stated that it was likely that he had concluded as an engineer that the accident would not happen without plaintiff having pulled the trigger; and that he had talked to plaintiff at the hospital on the Monday following the Saturday on which the accident occurred, but it would be complete speculation on his part as to what parts, if any, of the report came from plaintiff. Thus, if the information had come from the plaintiff the admission of the report would be barred, in any event, under the Wisconsin statute (Section 885.28(1)) which prohibits the admission of statements taken from injured parties within 72 hours of a personal injury accident.

The judgment order appealed from is affirmed.

Affirmed.