**Darlene PALLESON, Executor of the Estate of John Carroll, et al., Appellees,**

v.

**JEWELL COOPERATIVE ELEVATOR, Appellant.**

**No. 55862.**

Supreme Court of Iowa.

May 22, 1974.

---

Stewart H. M. Lund and Patrick B. Chambers, Webster City, for appellant.

Jim R. Sween of Lundy, Butler, Wilson & Hall, Eldora, and Brekken, Deppe & Reed, Story City, for appellees.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

REYNOLDSON, Justice.

Defendant Jewell Cooperative Elevator (Jewell) appeals from judgment entered on jury verdict against it, in litigation arising out of a liquified petroleum gas furnace explosion. We affirm.

The explosion on August 30, 1967, damaged a residence owned by plaintiffs Knudson, Armstrong, Hedderich and Coston, and injured John Carroll, who leased the dwelling. These persons joined in filing a personal injury and property damage action in several divisions. Carroll died from causes unrelated to his injuries, on April 3, 1971, before trial. The executor of his estate was substituted as plaintiff.

Other defendants were variously eliminated from this litigation by special appearance, summary judgment, and jury verdicts.

With respect to Jewell, the case was submitted to the jury by special interrogatories based on theories of specific negligence, implied warranty, strict liability and res ipsa loquitur. It found against Jewell only on the basis of res ipsa loquitur. In response to damage interrogatories the jury fixed the owners' damages at $7000 and damages to Carroll's estate at $40,000.

The furnace involved was a 150,000 B.T.U. Armstrong furnace purchased in November 1962. It was uncrated by one Mortvedt with the help of Carroll. They positioned it on a poured concrete slab, installed a chimney flue pipe, and constructed the hot and return air ductwork.

Service personnel from Jewell installed the bulk tank and the gas line to the furnace. A copper line carried the gas from the tank regulator through a low pressure regulator on the outside of the house and then to a manual shut-off valve above the furnace. Black iron pipe was used to pass the gas through the cut-off valve and to a drip-leg. The drip-leg was a segment of capped black pipe about two inches long extending toward the floor from a tee in the line outside the furnace. The function of the drip-leg was to capture foreign materials in the gas supply system. From the tee the gas was carried by a short length of the same size black pipe into the furnace casing through a knock-out panel orifice. It is this short horizontal pipe length, and who installed it, which assumed major trial significance.

The short gas pipe just referred to connected on the inside of the furnace with a vertical pipe leading upward from the main solenoid gas control valve.

Following closure of the gas supply line from the tank to the furnace it was never broken or disconnected. The minor service calls from date of installation of the gas supply to the date of explosion were all performed by Jewell, which also furnished all gas used.

The explosion at early daylight blew out a side of the house. When Carroll, who had been sleeping in bed, regained consciousness he was lying on the side of the house about twelve feet from the building.

On the same day Lionel K. Arnold, a private consultant and retired professor of engineering at Iowa State University, conducted an investigation with a deputy state fire marshall. A small piece of elm leaf was found within the enclosed gas supply between the plunger and the valve seat in the solenoid valve, permitting gas to escape in explosive quantities.

Jewell's brief presents eleven issues for review, which we consolidate into seven divisions.

I. *Submission on the theory of res ipsa loquitur.*

Jewell asserts trial court erroneously permitted the case to go to the jury on the theory of res ipsa loquitur, because the evi-

dence clearly failed to show it had exclusive control of the instrumentality.

Plaintiffs' theory was that a piece of elm leaf was introduced into the gas supply line for Carroll's furnace at some point between the storage tank and the solenoid valve inlet. Shortly before the explosion occurred, the leaf worked its way into the solenoid valve seat. The leaf held the valve open, permitting escape of the gas which eventually exploded.

Thus plaintiffs argue the instrumentality which is significant is not the house, the furnace, or the solenoid valve, but the gas and gas supply line which transported the leaf segment to the valve.

■ The doctrine of res ipsa loquitur is only a rule of evidence, not of substantive tort law. Wiles v. Myerly, 210 N.W.2d 619, 624 (Iowa 1973).

■ Under this doctrine, where 1) injury is caused by an instrumentality under the exclusive control of defendant, and 2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference defendant was negligent. Thompson v. Burke Engineering Sales Co., 252 Iowa 146, 148–49, 106 N. W.2d 351, 353 (1960); Eaves v. City of Ottumwa, 240 Iowa 956, 969, 38 N.W.2d 761, 769 (1949).

■ The res ipsa theory does not raise any inference as to what did occasion the injury-causing event. If the necessary causal evidence is circumstantial, it must make plaintiffs' theory not merely possible, but more probable than any other theory based on the evidence. Rule 344(f)(16), Rules of Civil Procedure; Wilson v. Paul, 176 N.W.2d 807, 809 (Iowa 1970).

■ It is not required for application of the doctrine to prove defendant had control of the instrumentality when the injury oc-

curred. It is enough to show control at time of the alleged negligent act, provided plaintiff proves there was no change in condition of the instrumentality, and no intervening act, which could reasonably have caused the event resulting in the injury. Pastour v. Kolb Hardware, Inc., 173 N.W. 2d 116, 125 (Iowa 1969); Sweet v. Swangel, 166 N.W.2d 776, 778 (Iowa 1969); Thompson v. Burke Engineering Sales Co., supra, 252 Iowa at 149–50, 106 N.W.2d at 353.

■■ In this case the jury could have found the following facts. The furnace manufacturer inspected and tested the solenoid valve and placed masking tape over the inlet to guard against introduction of foreign materials. Nothing in the furnace was preassembled at the factory between the solenoid valve and the gas supply. The furnace remained enclosed in its shipping carton until it arrived in the Carroll basement. Neither Mortvedt nor Carroll had anything to do with the gas supply or piping the gas into the furnace.

The jury could have found Jewell's employees Anderson and Jacobson were the only ones who hooked up the gas supply, and that Jacobson followed the usual practice of removing the knock-out panel and installing the black iron pipe into the furnace itself, connecting it to the solenoid valve and starting the furnace in operation. Thereafter, Jewell alone serviced the system and furnished all the gas. Carroll never attempted any adjustments.

It is apparently agreed an elm leaf segment in the solenoid valve caused the gas leak and resulting explosion. From expert testimony the jury could have determined this foreign material could not have been in the valve very long without having caused trouble and was therefore not in the valve when the furnace was installed. There was evidence from which the jury might determine the leaf could not have become positioned in the valve as a result of or after the explosion.

Applying our law above set out to these circumstances, we hold a jury question was generated on the question of Jewell's control of the gas line and supply, which could well be the instrumentality which introduced the leaf particle resulting in the solenoid valve's malfunction. Neither the furnace nor the solenoid (absent the leaf segment) were defective. Jewell's lack of control over those instrumentalities is immaterial to the issue of application of the res ipsa theory. See Wilson v. Paul, supra, 176 N.W.2d at 811, ("We believe the trial court failed to recognize the different purposes for showing control of the torch and control of the building").

Jewell further argues this case should not have been submitted to the jury on the theory of res ipsa loquitur because the evidence did not show Carroll's injury was caused without his fault.

■ Ordinarily plaintiff meets this burden (which should not be confused with the problem of contributory negligence) by showing he has done nothing abnormal with the instrumentality causing the injury and has used it in the manner and for the purpose for which it was intended. Sweet v. Swangel, supra, 166 N.W.2d at 778. He has the burden of proof by a mere preponderance of the evidence: even though the question of his own contribution is left in doubt, res ipsa loquitur may still be applied under proper instructions to the jury. Prosser, *Res Ipsa Loquitur in California*, 37 Cal.L.Rev. 183, 202 (1949).

We hold this burden as to Carroll's activity was sufficiently met to warrant submission of the case on the res ipsa theory.

■ Nor do we agree with Jewell the case should not have been submitted to the jury on both the res ipsa loquitur doctrine and allegations of specific negligence. It is not sufficient to assert, as does Jewell, that because plaintiffs' petition alleges the explosion was caused by the leaf particle there was no occasion for application of the res ipsa doctrine. The fighting issue

was how the foreign substance was introduced into the system. This set of facts presents the proper circumstances for submission of the case on both specific negligence and res ipsa loquitur. Eaves v. City of Ottumwa, supra, 240 Iowa at 968, 38 N.W.2d at 768; see Grings v. Great Plains Gas Co., 260 Iowa 1309, 1317–18, 152 N.W.2d 540, 544–45 (1967).

■ A closely related issue raised by Jewell is based on the requirement that for the doctrine to apply the occurrence must be "such as in the ordinary course of things would not happen if reasonable care had been used." See Thompson v. Burke Engineering Sales Co., supra, 252 Iowa at 148, 106 N.W.2d at 353. The inference of negligence permitted arises out of common experience, not out of knowledge of specific negligent acts which occur in a given case. Wagner v. Northeast Farm Service Company, 177 N.W.2d 1, 4 (Iowa 1970). But in *Wagner*, relied on by Jewell, the court only held an LP gas explosion would not invoke a common experience that a gas explosion results from negligence of the system installer. That case in no way modified our holding in Pastour v. Kolb Hardware, Inc., supra, 173 N.W.2d at 125, that common experience tells us ordinarily a gas explosion will not happen if due care has been exercised by all concerned.

■ Narrowing the focus, common experience compels an inference that ordinarily elm leaf particles would not be found in a solenoid gas control valve unless someone was negligent. We hold for plaintiffs on this issue.

■ In its final related issue, Jewell asserts the case should not have been submitted on the res ipsa loquitur theory because both parties were equally informed as to the circumstances surrounding the explosion. This contention is grounded on several Iowa decisions stating the underlying reason for the res ipsa rule is that evidence of the operative causal facts is accessible only to defendant. See Wiles v.

Myerly, supra, 210 N.W.2d at 625–26; Edwards v. Des Moines Transit Company, 251 Iowa 163, 166, 99 N.W.2d 920, 921 (1959).

However, as this court noted in Boyer v. Iowa High School Athletic Association, 260 Iowa 1061, 1066, 152 N.W.2d 293, 296 (1967), we have never held presence of this "underlying reason" is an indispensable requirement for the application of the doctrine.

In any event, common experience dictates there should not be an elm leaf in the enclosed solenoid gas control valve of a residential furnace. The thing does speak for itself. The jury could well believe Jewell's employees who enclosed the gas supply system were best positioned to explain how the leaf particle came to be there.

II. *Hypothetical questions asked of expert.*

Of the experts who testified for plaintiffs, Dr. Leo C. Peters' testimony was most damaging to Jewell. He is an associate professor in mechanical engineering at Iowa State University. His doctorate dissertation related to gas flow. Dr. Peters' background included experience in setting up laboratory experiments to conduct various tests and to observe resulting phenomena.

In preparation for his contemplated testimony this witness set up an experiment employing black pipes of the same dimension as used in the Carroll furnace gas supply system, a similar burner apparatus, a drip-leg and a gas supply under the pressure called for by the Armstrong furnace factory instructions. Dr. Peters placed leaves and papers in the solenoid valve as used in the experiment and observed the various flames caused by the leaking gas in areas of the manifold not designed as combustion locations. Blackened areas indicated similar unusual flames had occurred in the Carroll furnace.

This witness injected small bits of leaves and papers into the test system and observed their migration through the piping. Velocity of gas flow and the orientation of the leaf to that flow largely determined the rate of movement. Movement was obtained in all particles. All particles placed in the experimental apparatus on the supply source side of the drip-leg were trapped by it. Principles formulated based on this phenomena permitted Dr. Peters to draw the conclusion (testified to over objection) that any leaf particle in the piping on the supply side of the drip-leg would have been blown out the open drip-leg during installation if, as Jewell's employees testified, they used air pressure in the bulk tank to blow the line to that point. One employee testified the practice was not to blow out but to visually inspect the short length of black pipe leading from the drip-leg into the solenoid for foreign materials. No one testified this step was taken in the Carroll gas supply installation. A leaf segment in that pipe length, occasionally moving in the gas flow, had an unobstructed ultimate access to the solenoid.

Dr. Peters was asked if he had opinions on various facets of the case, based on an assumed set of facts and on the phenomena observed in his "tests and experiments" and "not upon the specific test results."

Jewell asserts objections to these questions were erroneously overruled. The only objections which were not too general or thereafter clearly cured were grounded on failure to show all conditions in the laboratory tests were identical to the conditions in the Carroll gas supply and furnace installation. It is this ground Jewell most vigorously argues in an excellent brief.

It is generally agreed experimental evidence is admissible if it is of such nature that it tends to aid the jury deliberations. 29 Am.Jur.2d, Evidence § 825, pp. 914–16. Application of the abstract rule that evidence of experiments is admissible only when the experiment is shown to have been made under essentially

the same conditions must necessarily vary with the particular circumstances of each case. Scott v. Homesteaders, 149 Iowa 541, 545–48, 129 N.W. 310, 311–12 (1910). In certain situations evidence has been admitted despite a failure to show similarity of conditions in several particulars. See Althof v. Benson, 259 Iowa 1254, 147 N.W.2d 875 (1967); Brooke v. Chicago, Etc., Ry. Co., 81 Iowa 504, 47 N. W. 74 (1890). Admission of such testimony is a matter peculiarly within the discretion of trial court. Hackman v. Beckwith, 245 Iowa 791, 804, 64 N.W.2d 275, 283 (1954).

■ Under the circumstances presented here, we believe the applicable rule is expressed in McCormick on Evidence § 202, pp. 486–87 (2d ed. 1972):

"It seems also that experiments designed to show the general traits and capacities of materials involved in the controversy are often admitted in evidence without confining the experiments to the conditions surrounding the litigated situation. * * * Further, where proponent makes no claim to have reenacted or simulated the whole or a substantial part of the original happening, recent decisions have distinguished these limited-purpose experiments, and have adapted the similarity requirement accordingly. The question, as always, is whether the evidence will assist the jury without confusing them."

See Millers' Nat. Ins. Co., Chicago, Ill. v. Wichita Flour M. Co., 257 F.2d 93 (10 Cir. 1958); Grant v. Younker Bros., 244 Iowa 958, 58 N.W.2d 834 (1953); Hardman v. Helene Curtis Industries, Inc., 48 Ill.App. 2d 42, 198 N.E.2d 681 (1964); Johnson v. Chicago & North Western Railway Co., 9 Ill.App.2d 340, 132 N.E.2d 678 (1956); Current v. Columbia Gas of Kentucky, 383 S.W.2d 139 (Ky.1964); Council v. Duprel, 250 Miss. 269, 165 So.2d 134 (1964); 3 Jones on Evidence § 15.8, pp. 25–27 (6th ed. 1972).

■ Here the limited purposes of the tests were carefully explained. Dr. Peters based his opinions in part on principles developed from certain demonstrated phenomena, not on the results of any specific tests.

Under these circumstances we do not find such a clear showing of abuse of trial court's discretion as would require a reversal. See Fisher, Inc. v. Standard Brands, Inc., 204 N.W.2d 579, 582 (Iowa 1973); Rasmussen v. Thilges, 174 N.W.2d 384, 387 (Iowa 1970); Hardman v. Helene Curtis Industries, Inc., supra.

III. *Submission of both strict liability and implied warranty in the same action.*

■ Jewell asserts this was not the exceptional case which would justify submission of the case to the jury on both these theories, citing Hawkeye Security Insurance Co. v. Ford Motor Co., 199 N.W.2d 373, 381–82 (Iowa 1972).

But here the jury upon special interrogatories found in Jewell's favor on both strict liability and implied warranty. Under a long line of Iowa decisions, where the issue is found in favor of the complaining party, all inference of prejudice is avoided. See, e. g., Oakes v. Peter Pan Bakers, Inc., 258 Iowa 447, 459, 138 N.W. 2d 93, 98 (1965); Cunningham v. Court, 248 Iowa 654, 662, 82 N.W.2d 292, 295 (1957).

IV. *Failure to give requested instruction.*

Jewell requested an instruction that it was "not an insurer of any and all latent or hidden defects in the furnace installation and can be charged only with the duty of reasonable care only as defined in these instructions."

Trial court's instruction 2 informed the jury the mere fact an accident had occurred was not sufficient to show any defendant was liable. In that instruction and

instruction 4 plaintiffs' burden to prove their claim was clearly articulated. The latter instruction defined "negligence" and "ordinary care."

These and other instructions clearly protected this defendant from being cast in the role of insurer.

■ In determining whether there is an error in trial court's failure to submit a requested instruction, we look to all relevant instructions. If the substance of the requested instruction is covered in instructions given it is not error to refuse the request made. Collegiate Mfg. Co. v. McDowell's Agency, Inc., 200 N.W.2d 854, 858 (Iowa 1972); McCarthy v. J. P. Cullen & Son Corp., 199 N.W.2d 362, 367–68 (Iowa 1972).

■ Applying this test, we find no reversible error in trial court's failure to give the above requested instruction.

V. *Plaintiffs' failure to reply to "new matter" in Jewell's answer.*

Jewell contends plaintiffs, in failing to file a reply, admitted Carroll's contributory negligence and a verdict should have been directed.

Our present rule 73, Rules of Civil Procedure, requires a reply to new matter in an answer. Rule 102, R.C.P. provides, "Every fact pleaded and not denied in a subsequent pleading as permitted by these rules shall be deemed admitted * * *."

■ Here the affirmative allegations in the answer basically asserted Carroll and Mortvedt, in "making the installation," failed to seek engineering advice, and were without knowledge, experience or training. Those facts, if true, would not be fatal to plaintiffs' case.

■ Particularly relevant is the following from Theobald v. Weber, 259 Iowa 452, 456, 143 N.W.2d 418, 421 (1966):

"Too much is claimed for plaintiff's failure to reply. * * * At most, failure to reply amounts to an admission of the facts well pleaded in the answer, not of conclusions defendant seeks to draw therefrom, especially those which may not properly be drawn from the facts pleaded."

■ Moreover where, as here, the facts stated in the petition contradict facts stated in the answer, the issues are drawn without necessity of a reply. In Re Marriage of Ried, 212 N.W.2d 391, 393 (Iowa 1973); Connell v. Hays, 255 Iowa 261, 271–72, 122 N.W.2d 341, 347 (1963); Federated Mut. Implement & H. Ins. Co. v. Erickson, 252 Iowa 1208, 1218, 110 N.W.2d 264, 270 (1961).

We resolve this issue against Jewell.

VI. *Failure to grant new trial.*

■ Jewell asserts because of claimed trial errors, treated above, the jury's verdict failed to administer substantial justice.

The dispute in this case was factual. There was substantial evidence to support the jury's determination. We find no cause to interfere with the wide discretion permitted trial court in its ruling denying the motion. Rule 344(f)(3), R.C.P.; Thomas Truck & Cast. Co. v. Buffalo Cast. & Wh. Corp., 210 N.W.2d 532, 536 (Iowa 1973); Northrup v. Miles Homes, Inc. of Iowa, 204 N.W.2d 850, 861 (Iowa 1973).

VII. *Claimed excessiveness of verdict.*

■ Jewell contends because the verdict for Carroll's estate was excessive this court should order a retrial, or at least order a remittitur to a proper amount.

Of the $40,000 awarded the estate, $4040.40 was for stipulated damages to personal property. Carroll's medical expenses for treatment totaled $993.55.

**18**

A detailed recital of all evidence on this point would add nothing to our jurisprudence. Carroll was blown out of the house. He had a left shoulder injury with an acromioclavicular separation which was not corrected by surgery. He suffered dizziness, headaches, partial deafness, sleeplessness, nightmares, pain and suffering. His disability was permanent. The jury could have found he underwent a personality change and lost his senses of taste and smell.

Trial court ruled, "The executor's verdict was on the high side but is supported by the evidence. The Court has no cause to tamper with it." We agree. See Pagitt v. City of Keokuk, 206 N.W.2d 700 (Iowa 1973); Frantz v. Knights of Columbus, 205 N.W.2d 705 (Iowa 1973); James v. Rosen, 203 N.W.2d 256 (Iowa 1972); Rosenau v. City of Estherville, 199 N.W.2d 125 (Iowa 1972).

The case is therefore affirmed.

Affirmed.