513 F.2d 901
 Lynnette D. KOPPINGER, etc., et al., Appellee,
v.
CULLEN-SCHILTZ & ASSOCIATES, etc., et al., Appellants.
Lynnette D. KOPPINGER, etc., et al., Appellee,
v.
Merl GOERDT, etc., et al., Appellants.
Lynnette D. KOPPINGER, etc., et al., Appellee,
v.
IOWA PUBLIC SERVICE CO., etc., et al., Appellants.
 Nos. 73-1873, 74-1031 and 74-1146.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 10, 1974.
Decided March 31, 1975.
Rehearing and Rehearing En Banc Denied in Nos. 73-1873,
74-1031, April 22,
1975.
Rehearings Denied April 22, 24, 1975.
 
 John D. Randall, Cedar Rapids, Iowa, for Cullen-Schiltz.
 Raymond R. Stefani, Cedar Rapids, Iowa, for Goerdt.
 Larry J. Cohrt, Waterloo, Iowa, for Iowa Public Service.
 William C. Ball, Waterloo, Iowa, for Koppinger.
 Before ROSS and STEPHENSON, Circuit Judges, and SCHATZ, District Judge.*
 STEPHENSON, Circuit Judge.
 
 
 1
 This is a diversity tort action arising from a natural gas service line explosion. The appellate agenda consists of a long list of alleged trial court errors in the conduct of the seven-week jury trial. We affirm.
 
 
 2
 Richard Koppinger died as a result of the natural gas explosion and ensuing fire at 536 East End Avenue, Evansdale, Iowa, on February 14, 1970. Mrs. Koppinger and the two children received burns. Mrs. Koppinger brought this negligence action in the United States District Court for the Northern District of Iowa.[1] The jury award was against the three corporate defendants, Cullen-Schiltz & Associates[2] (CSA). Goerdt Construction Company (Goerdt), and the gas utility company, Iowa Public Service (IPS), in the amount of $990,000 compensatory damages. The jury also returned a verdict of $60,000 exemplary damages against Goerdt and CSA.[3] The jury did not find against the engineers of CSA who were sued in their individual capacities.
 
 
 3
 CSA was hired by the city of Evansdale, Iowa, for professional engineering services in the design and construction of a proposed city sewer system. CSA contracted with the city to prepare plans and specifications for the sewer system, solicit construction bids, oversee and inspect the sewer construction job.
 
 
 4
 Goerdt's bid for the construction work was accepted by the city. Goerdt in turn agreed with the utility company, IPS, that IPS would locate all gas lines for Goerdt ahead of the trenching operation. IPS also informed Goerdt that it would conduct the repair work on any gas lines which were accidentally damaged or broken during the sewer construction project. IPS billed Goerdt for the repair work.
 
 
 5
 In late January 1970 it was discovered that the sewer line in the 500 block of East End Avenue was defective. Goerdt found it necessary to retrench this stretch of sewer line and make repairs. During the retrenching operation Goerdt struck and damaged three gas service lines. IPS was notified. IPS servicemen repaired the lines with Dresser couplings.[4] The evidence was that these couplings were used rather than rewelding, as was the usual practice, because IPS could not readily get access to the gas shut-off tee due to the sewer construction.
 
 
 6
 Goerdt relaid the sewer line, backfilled the trench with an endloader, using the existing material at the site, and compacted the trench by repeatedly running the endloader over the trench.
 
 
 7
 IPS returned and checked for gas leaks after the trench had been only partially backfilled. No leaks were found. IPS intended to recheck the lines after completion of the backfilling. There was testimony that IPS workmen did not return due to inclement weather and other duties.
 
 
 8
 After the explosion at 536 East End Avenue, IPS sent a crew to the area. They evacuated the homes and began their investigation. Two of the gaslines which had been previously repaired by IPS were bent down, broken and leaking gas at the Dresser couplings. There was evidence that one of the couplings had a huge chunk of frozen backfill material resting on it.
 
 
 9
 There was evidence that Goerdt had hastily backfilled the trench and that frozen material was pushed into the trench haphazardly, along with the remaining backfill.
 
 
 10
 While there was evidence that the procedure followed was not uncommon and that CSA had given Goerdt permission for the procedure, the defendants agree that the gas lines were not properly supported and anchored. Moreover, the procedures followed did not comport with the written contract specifications between the city and Goerdt.
 
 
 11
 The defendants were by no means defending this lawsuit as a unit. Which of the defendants was liable was hotly contested. There were cross-claims for indemnity.
 
 
 12
 Against this general backdrop, we turn to the specific allegations of the various defendant-appellants, detailing the pertinent facts as we proceed.
 
 I. INCONSISTENT VERDICTS
 
 13
 The jury returned its verdict against CSA but in favor of the individual engineers who comprised the professional corporation. CSA contends that any negligence on the part of CSA had to stem from the engineers themselves and that verdicts against CSA and in favor of the individual defendants on identical counts are inconsistent. CSA requests a new trial.
 
 
 14
 The CSA employee-inspector on the job was John Best. He was not charged individually in the complaint. From the evidence in the case, the jury could reasonably find that CSA's duty to the plaintiffs was breached by reason of the poor quality of inspection and supervision afforded by John Best.
 
 
 15
 CSA was the supervisory engineering firm for the project. Its contract with the city provided for full-time supervision of the sewer construction job. John Best was the man on the job. There was ample evidence from which the jury could find that Best did not fulfill the contract between CSA and the city and improperly allowed careless backfill operations to occur.
 
 
 16
 The verdicts are not inconsistent. See Fonda v. Northwestern Public Service Co., 138 Neb. 262, 292 N.W. 712, 719 (1940).II. RES IPSA LOQUITUR
 
 
 17
 In Iowa the jury may consider negligence under the rule of evidence known as res ipsa loquitur if the plaintiff has shown that:
 
 
 18
 1) injury is caused by an instrumentality under the exclusive control of defendant, and 2) the occurrence is such as in the ordinary course of things would not happen if reasonable care had been used, the happening of the injury permits but does not compel an inference defendant was negligent (citing cases). Palleson v. Jewell Cooperative Elevator, 219 N.W.2d 8, 13 (Iowa 1974).
 
 
 19
 The trial court in the instant case instructed the jury pursuant to the res ipsa rule as to all the defendants, saying in part: " * * * if you find (1) plaintiff was injured by an instrumentality under the exclusive control of a defendant or defendants and * * * " (emphasis ours). The jury was also instructed on specific counts of negligence as to each individual defendant. The parties did not request and the court did not submit special interrogatories inquiring of the jury whether their verdict was based upon res ipsa or specific counts of negligence.
 
 
 20
 Both Goerdt and CSA claim that IPS had exclusive control of the instrumentality causing the injury so that the court erred in applying res ipsa to them. They further argue that the doctrine of res ipsa loquitur is not applicable where multiple defendants are being sued.
 
 
 21
 The Iowa Supreme Court, as far as our research has disclosed, has not had the opportunity to entertain direct argument on the application of res ipsa to multiple defendants. It has applied the doctrine, without much comment, to situations where multiple defendants have been properly charged as joint tortfeasors or have been in joint control of the instrumentality causing the injury. Pastour v. Kolb Hardware Inc., 173 N.W.2d 116, 126 (Iowa 1969); see Wiles v. Myerly, 210 N.W.2d 619 (Iowa 1973); Frost v. Des Moines Still College of Osteo. & Surg., 248 Iowa 294, 79 N.W.2d 306 (1956). In our view, this is such a case.
 
 
 22
 We do not agree that IPS was in exclusive control.
 
 
 23
 The instrumentality in question was escaping gas. The controversy concerned who was responsible for the leak.
 
 
 24
 There is no evidence or allegation that the Dresser couplings or their installation by IPS was defective. There was evidence that the breakage and leak was caused by the use of large chunks of frozen backfill and lack of support for the gas service lines during the backfilling of the sewer trench. There was evidence too that IPS should have and could have seen to it that the lines were properly supported. IPS did not supervise the backfilling though they had informed Goerdt that they would be responsible for the repair of gas lines.
 
 
 25
 Goerdt did all of the backfilling. The evidence was strong that Goerdt was careless in the backfilling, used improper frozen backfill, failed to properly compact the backfill, and failed to provide proper anchorage and support to the gas service lines.
 
 
 26
 CSA was the engineer in charge of the project for the city. It had the authority and duty to supervise and direct Goerdt's operations.
 
 What must be established is control:
 
 27
 at time of the alleged negligent act, provided plaintiff proves there was no change in condition of the instrumentality, and no intervening act, which could reasonably have caused the event resulting in the injury (citing cases).
 
 
 28
 Palleson, supra. There was no plausible claim that there was any intervening cause for the explosion which occurred shortly after the work was completed.
 
 
 29
 Joint control of the instrumentality was properly charged. Consequently, the trial court did not abuse its discretion in submitting res ipsa as to all defendants.
 
 
 30
 We make one final note regarding lack of prejudice to the defendants. The record demonstrates that plaintiff had established submissible counts of individual negligence against all defendants. It is fair to infer that the jury based its verdict on the individual counts since exemplary damages were returned against Goerdt and CSA but not against IPS. Under the circumstances appellants have shown no prejudice.[5] See Grings v. Great Plains Gas Co., 260 Iowa 1309, 152 N.W.2d 540, 544-45 (1967).
 
 III. EVIDENTIARY RULINGS
 
 31
 A. Exhibit 51-Business Records Exception to Hearsay Rule
 
 
 32
 Plaintiff Koppinger with the support of IPS offered the investigative report of IPS gas superintendent Leonard Schneider. CSA and Goerdt objected to the introduction of the document. Koppinger and IPS laid the foundation for the introduction of the report as a business record. 28 U.S.C. § 1732(a); Iowa Code § 622.28 (1975). The court and the parties interrogated Schneider regarding the preparation of the report. He testified that he had prepared the report as a summation of his activities during the investigation following the explosion. The report was one which he was required to make.
 
 
 33
 The report contains a great deal of hearsay.[6] It is not of the species which has been classified as having any special indicia of trustworthiness. Palmer v. Hoffman, 318 U.S. 109, 113-15, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Nor was it made in what would be termed the regular course of IPS' business. Palmer, supra.
 
 
 34
 The admissibility of investigative and incident reports is suspect. See Picker X-Ray Corp. v. Frerker, 405 F.2d 916, 922-23 (8th Cir. 1969); Larson v. DeVilbiss Co., 454 F.2d 461, 464 (7th Cir. 1971); but see Hawkins v. Gorea Motor Express, Inc., 360 F.2d 933, 934 (2d Cir. 1966); see Jones on Evidence, § 12:14 at 370 (1972); McCormick, Law of Evidence, § 294 at 617-18 (1954).
 
 
 35
 "The deleterious effect of admission on the factfinding process may outweigh any benefit to be derived from admission." Raycraft v. Duluth, Missabe and Iron Range Railway Co., 472 F.2d 27, 31 (8th Cir. 1973).
 
 
 36
 The trial judge has broad discretion regarding the admissibility of evidence. Raycraft, supra, at 31-32. The court considered the admissibility of Exhibit 51 with care. We find that the admission of the report was cumulative and, at most, harmless error. Schneider was extensively cross-examined. The matters contained in his report were all the subject of other testimony in the case. No prejudice has been shown.
 
 B. Parol Evidence Objection
 
 37
 Goerdt argues that the trial court abused its discretion in refusing to allow it to introduce evidence of certain parol agreements inducing its execution of the written contract with the city. The evidence was objected to by IPS as in violation of the parol evidence rule, and the objection was sustained.
 
 
 38
 We need not enter into a discussion of the propriety of applying the parol evidence rule to the instant situation. In reading the record, including Goerdt's offer of proof, it becomes readily apparent that the evidence which Goerdt sought to get before the jury ultimately came in.
 
 
 39
 Goerdt's defense was that it did nothing out of the ordinary in using frozen backfill and in not mechanically tamping the soil around gas lines with six-inch lifts and that these procedures were specifically authorized by CSA. Goerdt was concerned that the jury be apprised that oral arrangements with CSA and the city induced Goerdt's signing of the contract and that such verbal arrangements and changes in the form contract did take place between the engineers and itself as contractor. The substance of such evidence was eventually before the jury.
 
 
 40
 Mr. Carolan of CSA, project engineer, testified that he gave Goerdt permission to use frozen backfill and the city mayor was made aware of the same; further, that Goerdt was not required to mechanically tamp the backfill as set out in certain portions of the written agreement. Goerdt himself took the stand and testified in detail with respect to the same matter. Goerdt's counsel argued these points to the jury. Goerdt has shown no prejudice in this regard.
 
 
 41
 C. Introduction of IPS Standard Practices Manual
 
 
 42
 IPS contends that it was error to admit its standard practices manual into evidence. This was, of course, discretionary with the trial court. The manual was admissible since, among other things, it was some evidence of what was a customary or usual method of performance. Town of Radcliffe, Iowa v. Carroll, 360 F.2d 321, 323-24 (8th Cir. 1966); see Fed.R.Civ.P. 43(a); Annot., Evidence-Negligence-Defendant's Rule, 50 A.L.R.2d 16, 19.
 
 D. Deletion of Reference to Special Hazards
 
 43
 The written contract between the city and Goerdt was placed in evidence and allowed to go to the jury room. At the request of Koppinger and Goerdt the trial court deleted that portion of the contract which read:
 
 
 44
 3. Special Hazards. The contractor's and his subcontractors Public Liability and Property Damage Insurance shall provide adequate protection against the following special hazards: Existing underground utilities such as water mains, and laterals, gas main and laterals, telephone and telegraph and electric service lines.
 
 
 45
 The court also deleted the next following paragraph which referred to the minimum insurance requirements for the contractor, Goerdt, which were substantially below plaintiffs' request for damages. CSA objected to the deletion of these provisions. The contentions they raise are (1) the deletion prevented CSA "from showing the full extent of its lack of imposed responsibility for the gas lines" and (2) invited speculation by the jury as to what had been deleted.
 
 
 46
 Again, this was a discretionary matter with the court. Of course, the matter of insurance coverage should not enter into the jury's deliberations. Price v. King, 255 Iowa 314, 122 N.W.2d 318, 323 (1963).
 
 
 47
 It would have been impossible to remove the reference to insurance without destroying the sense of paragraph 3. We are satisfied that no abuse of discretion is shown. We agree with appellee Koppinger that the deleted provision would have been only cumulative with respect to the obligations imposed on Goerdt in the contract. CSA did not request a special instruction regarding the deletions. The jury was thoroughly instructed on the responsibilities and duties of the various defendants.
 
 IV. EXEMPLARY DAMAGES ADMINISTRATOR
 
 48
 The jury awarded exemplary damages to Mrs. Koppinger in her capacity as administrator of her husband's estate. See note 3 supra. Goerdt challenges the award arguing both that the court's instructions to the jury were improper and that an administrator cannot recover exemplary damages under Iowa law.
 
 
 49
 Recovery of exemplary damages by an administrator is an issue which has not been squarely faced by the Iowa Supreme Court.
 
 
 50
 The court has construed the Iowa wrongful death statutes to be survival statutes[7] which preserve for the benefit of the estate causes of action which the deceased could have brought had he survived. Egan v. Naylor, 208 N.W.2d 915, 917 (Iowa 1973); Fitzgerald v. Hale, 247 Iowa 1194, 78 N.W.2d 509, 512 (1956); see also Mallinger v. Brussow, 252 Iowa 54, 105 N.W.2d 626, 629-30 (1960). The court has stated that the object of the Iowa statute is "to render available to such representatives all the remedies to which the litigant, had he lived, might have resorted." Wendelin v. Russell, 259 Iowa 1152, 147 N.W.2d 188, 191 (1966).
 
 
 51
 Since it is apparent that the Iowa statute is of the survival type, we are satisfied that the submission of exemplary damages was proper. The trial court so found. It was not unfamiliar with the issue. See Leahy v. Morgan, 275 F.Supp. 424 (N.D.Iowa 1967) (McManus, Chief Judge). We give great weight to the district court's determination of state law. Halvorsen v. Dunlap, 495 F.2d 817, 821 (8th Cir. 1974).
 
 
 52
 Goerdt further contends that the jury should not have been instructed on exemplary damages at all since there was no evidence in the case that Goerdt acted in a willful, wanton, reckless and grossly negligent manner as required by Iowa law.
 
 
 53
 The jury instructions in question were in complete accord with the Iowa law and were essentially patterned after Iowa Uniform Jury Instruction 3.21.
 
 
 54
 There was some evidence that Goerdt performed the work carefully and that the use of frozen backfill was common in Iowa for wintertime sewer construction. There was record evidence, too, that Goerdt hastily and recklessly backfilled the sewer trench; that frozen material was dumped into the trench haphazardly; that CSA and Goerdt had agreed to disregard the contract provisions concerning compacting; and that their conduct was wanton, reckless and grossly negligent as defined by the Iowa law.
 
 
 55
 Our review of the record satisfies us that a jury issue was generated regarding exemplary damages. See generally Kirtley v. Bankers Life and Casualty Co., 198 F.Supp. 30 (S.D.Iowa 1961); aff'd conditionally, 307 F.2d 418 (8th Cir. 1962).
 
 V. JURY INSTRUCTIONS
 
 56
 Goerdt contends that several of the instructions to the jury were prejudicial as to it. In general, it attacks the submission of issues of negligence, res ipsa loquitur and exemplary damages; certain details in connection with compensatory damages; and the failure to submit interrogatories in connection with its claim for indemnity against IPS. A point by point discussion of these objections would serve only to lengthen this opinion. Suffice it to say that we have reviewed the instructions as a whole and find them to be sound. The matter of indemnity was properly determined by the court. See Division VIII infra.
 
 VI. EVENING HOUR TESTIMONY
 
 57
 CSA objects to the trial court's holding of an evening session lasting until 9:15 p. m. during the time when CSA was presenting its defense.
 
 
 58
 The trial was into its second month; the long session followed a holiday; and the court adequately forewarned the jury. We deem CSA's claim of prejudice in this regard to be frivolous.
 
 VII. MISCONDUCT AFFECTING JURY
 
 59
 After the case had been submitted to the jury and during the second day of deliberation, it came to the court's attention, through the magistrate, that the Deputy United States Marshal had communicated with one of the jurors about insurance. The court called the attorneys together in camera. The marshal was placed under oath while court and counsel questioned him concerning the incident. It came out at the hearing that one of the jurors had asked the marshal the identity of certain persons who had been in regular attendance at the trial. According to the marshal, he stated to the juror that one of the individuals was connected with IPS; that IPS was self-insured but that the individual was connected with a New York underwriting company. He also stated to the juror that the other persons were attorneys and/or spectators.
 
 
 60
 The court offered to give the jury a special instruction regarding the matter. IPS preferred that nothing be done. Koppinger agreed. Goerdt moved immediately for a mistrial and objected to the giving of an instruction. CSA specifically stated that it would not ask for a mistrial; that it would object to the giving of an instruction; and that it would leave the matter up to the discretion of the court.
 
 
 61
 Before this court Goerdt and CSA argue that the matter was so prejudicial as to them that a new trial is required. CSA mentions, without arguing the point, that the verdict may have been excessive.
 
 
 62
 The parties are entitled to a fair and impartial jury. The court, when apprised of possible matters affecting the jury, should give careful consideration to the matter but avoid compounding the problem. See United States v. Rowell, 512 F.2d 766 (8th Cir., filed March 21, 1975).
 
 
 63
 Absent showing of prejudice, the introduction of insurance into the trial will not be critical. Price v. King, 255 Iowa 314, 122 N.W.2d 318, 322-23 (1963); see also Fordyce v. Cappel, 257 Iowa 763, 133 N.W.2d 664 (1965).
 
 
 64
 The trial court was careful to determine what had taken place. The court offered to admonish the jury that the matter of insurance had nothing whatsoever to do with the case and they should not speculate as to the existence, kind, or amount of insurance coverage of a party. All parties rejected the offer. There is no showing that the jury discussed the matter. There is no prejudice shown. We are satisfied that no error was committed.
 
 VIII. INDEMNITY
 
 65
 All three defendants argue that they are entitled to indemnity. CSA seeks indemnity from both IPS and Goerdt. Goerdt seeks indemnity from IPS. IPS argues strongly that it is entitled to indemnity from Goerdt and CSA.
 
 
 66
 In Iowa indemnity may be premised on one of the following theories, as stated in Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303, 308 (1966);
 
 
 67
 (1) express contract, (2) vicarious liability (respondeat superior or the statutory liability imposed on the owners of automobiles), (3) breach of an independent duty running from the employer to the third party, (4) active (primary) as opposed to passive (secondary) negligence. (Citations omitted.) See also Peters v. Lyons, 168 N.W.2d 759 (Iowa 1969).
 
 
 68
 The trial court held that none of the parties was entitled to indemnity. We agree.
 
 
 69
 In short, this is not a case where the entire liability for the loss should rest on one of the parties. Ke-Wash Co. v. Stauffer Chemical Co., 177 N.W.2d 5, 10 (Iowa 1970); see also Iowa Power, supra 144 N.W.2d at 309; Davis, Indemnity Between Negligent Tort-feasors, 37 Iowa L.Rev. 517, 531 (1952). The record is replete with evidence of negligence against all three defendants.
 
 IX. COSTS
 
 70
 Goerdt complains of the taxing of plaintiffs' costs against the defendants in the total amount of $9,318.00. Specifically, it raises objection to costs relating to (1) failure of the court to assess four-sevenths of the allowable costs against the plaintiffs because of their failure to prevail against the four individual defendant-engineers of CSA, (2) discovery depositions, (3) attendance and mileage fees of witnesses, and (4) various copying and photographic costs.
 
 
 71
 The bill of costs proposed by a winning party should always be given careful scrutiny. The trial court has wide discretion, and its ruling will be reversed only upon a showing of abuse of that discretion. Linneman Construction, Inc. v. Montana-Dakota Utility Co., Inc., 504 F.2d 1365, 1370 (8th Cir. 1974); Fed.R.Civ.P. 54(d); Environmental Defense Fund, Inc. v. Callaway, 497 F.2d 1340, 1342 (8th Cir. 1974).
 
 
 72
 The trial court found that the defense put on by CSA and the individual defendants was, for the most part, identical and that the defendants' proof overlapped sufficiently so that it would not be unjust to deny apportionment. We agree.
 
 
 73
 Judge McManus in ruling on the costs recognized that the expense of depositions not used at the trial could be taxed provided they were reasonably necessary to the case and were not purely investigative in nature. See Semke v. Enid Automobile Dealers Ass'n, 52 F.R.D. 518 (W.D.Okl.1971). In the order approving costs the court observed:
 
 
 74
 Under the circumstances which existed in this case where defendants were reluctant to stipulate as to any material fact and extensive discovery was taken by all parties, the court feels that the deposition costs were proper.
 
 
 75
 Regarding witness fees, the court observed that the testimony of all witnesses listed was reasonably necessary to the disposition of the case, that the amounts were not unreasonable, and that no subsistence was claimed. The court further found that the remaining costs were reasonable and necessary. Under all the circumstances of this case, we find no abuse of discretion in the taxing of costs.
 
 X. CONCLUSION
 
 76
 This was a long and complicated trial. The errors claimed are many. The case went to the jury on counts of negligence which were clearly submissible. The court did not err in ruling as a matter of law that indemnity should be denied.
 
 
 77
 We think the parties had a fair and impartial trial free of prejudicial error.
 
 
 78
 The judgment is affirmed.
 
 
 
 *
 The Honorable Albert G. Schatz, District Judge, District of Nebraska, sitting by designation
 
 
 [1]
 The Honorable Edward J. McManus, Chief Judge, presiding
 
 
 [2]
 Now known as Cullen, Kilby and Carolan and Associates, P.C
 
 
 [3]
 The damages were awarded as follows: To Mrs. Koppinger in her own behalf $720,000 actual damages to be paid by the three defendants and $15,000 exemplary damages each against Goerdt and CSA; to Mrs. Koppinger as administrator of her husband's estate $240,000 actual damages to be paid by the three defendants and $10,000 exemplary damages each against Goerdt and CSA; to the son, Douglas Koppinger, $10,000 actual damages to be paid by the three defendants and $5,000 exemplary damages each against Goerdt and CSA; and to the daughter, Sara Koppinger, $20,000 actual damages to be paid by the three defendants and $5,000 exemplary damages each against Goerdt and CSA. The amount of the compensatory damages has not been challenged in this appeal
 
 
 [4]
 The Dresser Company, who makes this special nonweld fitting for gas pipes, was originally brought into the lawsuit by way of cross-complaints of IPS and CSA. IPS dismissed its complaint against Dresser before trial. CSA's cross-complaint was dismissed after the trial was under way
 
 
 [5]
 The Iowa Supreme Court has recognized that a case can properly go to the jury on both specific negligence and res ipsa loquitur, Palleson, supra 219 N.W.2d at 14, but that a finding in favor of plaintiff on both grounds is inconsistent. Grings v. Great Plains Gas Co., 260 Iowa 1309, 152 N.W.2d 540, 544-45 (1967). In Grings the court found that the inconsistent application of res ipsa is "mere surplusage" where there is sufficient evidence to support the individual counts. Grings, supra 152 N.W.2d at 545
 
 
 [6]
 Because we decide that the admission of Exhibit 51 was cumulative, we deem it unnecessary to set the exhibit out as a part of this opinion
 
 
 [7]
 "Death acts" create a new cause of action in favor of the decedent's personal representative for the benefit of certain persons while "survival acts" preserve those causes of action which the decedent would have had. See Prosser, Law of Torts, § 127 at 902 (1971)